IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSEPH A. KOHEN, BREAKWATER TRADING LLC, and RICHARD HERSHEY,<br><br>Plaintiffs,<br><br>v.<br><br>PACIFIC INVESTMENT MANAGEMENT COMPANY LLC, PIMCO FUNDS, and JOHN DOES 1-100,<br><br>Defendants. | No.  05 C 4681<br><br>Hon. Ronald A. Guzman |

## DEFENDANT PIMCO FUNDS' REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS

As set forth in the moving brief filed by PIMCO Funds, in addition to the substantive bases advanced in the motion to dismiss filed by co-defendant PIMCO, Plaintiffs' Corrected Consolidated Amended Class Action Complaint ("Complaint") fails to state a claim against PIMCO Funds for an additional and threshold reason:  according to the facts pled in the Complaint itself, PIMCO Funds could not have had the intent necessary to engage in market manipulation in violation of Sections 9(a) and 22(a) of the Commodity Exchange Act ("CEA").

In their one page of opposition to the motion to dismiss filed by PIMCO Funds (*see* Plaintiff's Memorandum in Opposition to PIMCO's Motions to Dismiss ("Pl. Mem.") at 23-24), Plaintiffs manage to ignore both settled law and even the plain language of their own Complaint.  In so doing, however, Plaintiffs fail to respond to the threshold argument actually advanced by PIMCO Funds on this motion that based on the very allegations Plaintiffs make in their Complaint, they have not adequately alleged -- nor can they adequately allege -- that

PIMCO Funds had the intent necessary to state a claim for market manipulation. But, under settled Rule 12(b)(6) standards, Plaintiffs cannot avoid the dismissal of their claims against PIMCO Funds either by ignoring the allegations of their complaint or by belatedly attempting to add new theories in their brief. And, even if Plaintiffs' newly-advanced theories were considered, Plaintiffs still have failed as a matter of law to state any claim of market manipulation against PIMCO Funds.

## ARGUMENT

### I. PLAINTIFFS HAVE FAILED TO ADEQUATELY PLEAD THAT PIMCO FUNDS HAD THE INTENT NECESSARY TO STATE A CLAIM FOR MARKET MANIPULATION UNDER THE CEA

#### A. Even On A Rule 12(b)(6) Motion, The Court Is Not Required To Accept Boilerplate Allegations That Are Contradicted By Facts Pled Elsewhere In The Same Complaint

Plaintiffs correctly note early in their brief that on a Rule 12(b)(6) motion "the Court must accept as true all *well-pleaded* factual allegations of the complaint." Pl. Mem. at 8 (emphasis added). When it comes to PIMCO Funds, however, Plaintiffs ignore this standard and instead insist that because they included boilerplate language in their Complaint alleging that PIMCO Funds "intended to assist in the manipulation and knowingly aided, abetted, counseled, induced and/or procured the manipulation," Plaintiffs adequately have pleaded a market manipulation claim against PIMCO Funds. Pl. Mem. at 23. Plaintiffs are wrong as a matter of law.

As Plaintiffs well know, it is only *well-pleaded* allegations that must be accepted as true by the Court. On the other hand, where the complaint contains inherently contradictory allegations, the complaint is not well-pleaded and cannot survive a motion to dismiss. *See, e.g., R.J.R. Services, Inc. v. Aetna Cas. and Sur. Co.*, 895 F. 2d 279, 280-81 (7th Cir. 1989) (while a court will "accept as true all well-pleaded factual allegations and inferences," the court is "not

obliged to ignore any facts set forth in the complaint that undermine the plaintiff's claim or to assign any weight to unsupported conclusions of law") (citations omitted).  Plaintiffs' Complaint should meet precisely the same fate.

As explained in PIMCO Funds' motion to dismiss (and as completely ignored in Plaintiffs' opposition brief), Plaintiffs themselves allege that PIMCO "caused" PIMCO Funds' conduct and "managed and controlled PIMCO Funds."  Complaint ¶ 23.  This allegation necessarily negates any allegation or implication that PIMCO Funds had the requisite intent to cause an artificial price.[1]

Plaintiffs also suggest that the question of PIMCO Funds' intent to manipulate the Treasury futures market cannot be determined until trial.  Pl. Mem. at 24.  Plaintiffs are again wrong on both the law and their own pleaded facts.  As a matter of law, the Court both can and should resolve on a Rule 12(b)(6) motion the question of whether Plaintiffs have adequately alleged each of the elements of their claim against PIMCO Funds, including the intent element.  And, PIMCO Funds has not, as Plaintiffs wrongly suggest, argued that the Court should accept its assertion that PIMCO directed its trading.  Rather, PIMCO Funds, as is proper on a Rule 12(b)(6) motion, has directed the Court's attention to Plaintiffs' own assertions that PIMCO Funds was "managed and controlled" by PIMCO.  Plaintiffs should not be permitted to avoid the dismissal of their claims against PIMCO Funds by avoiding any scrutiny of their own pleading.

---

[1] *See In re Soybeans Futures Litigation*, 892 F. Supp. 1025, 1044 (N.D. Ill. 1995) (holding that a market manipulation claim requires that "the defendant specifically intended to cause the artificial price.") (emphasis added); *accord Frey v. Commodity Futures Trading Comm'n*, 931 F.2d 1171, 1175 (7th Cir. 1991) ("Manipulation, broadly stated, is an intentional exaction of a price determined by forces other than supply and demand.").

- 4 -

**B.    Plaintiffs' Assertions That PIMCO Funds Had Intent To Manipulate The Treasury Futures Market Because It Allegedly Profited On Trades Made By Its Investment Advisor Are Supported By Neither Law Nor Logic**

Plaintiffs also contend -- albeit again without any support or citation -- that PIMCO Funds allegedly had a motive to manipulate the Treasury futures market and that PIMCO Funds profited from the allegedly inflated prices. Pl. Mem. at 23. Plaintiffs have erroneously conflated "motive" and/or "profit" with "intent."

It is absolutely clear from the case law previously cited that intent is a crucial and independent prerequisite to a market manipulation claim. Indeed, Plaintiffs' apparent assertions that motive and profit can constitute intent serves to illustrate why an independent intent requirement has been universally recognized by the courts. Allowing a market manipulation claim to be based on mere profit would make any investor who made a profit during any act of market manipulation liable to anyone who lost money in the market, regardless of the "profitable" investor's involvement, knowledge, or ability to manipulate the market. The CEA was meant to regulate the conduct of market participants, not provide a market insurance policy for any investors who lose money. Here, Plaintiffs' own Complaint shows that any conduct PIMCO Funds is alleged to have engaged in was "managed and controlled" by PIMCO, and not attributable to any alleged intent on the part of PIMCO Funds. Plaintiffs' rote invocation of the words "motive" and "profit" do not change that result.

## II. PLAINTIFFS' NEWLY-MINTED ALLEGATIONS OF AN "AGENCY" RELATIONSHIP BETWEEN PIMCO AND PIMCO FUNDS ARE BOTH IMPROPER AND IRRELEVANT

### A. Plaintiffs Cannot Amend Their Complaint By Asserting New Theories In Opposition To A Motion To Dismiss

Apparently realizing the fatal weakness of the claims they pled against PIMCO Funds, Plaintiffs attempt to use their Memorandum in Opposition to assert a new basis of PIMCO Funds' liability: that PIMCO was PIMCO Funds' "agent," and is therefore liable under Section 2(a)(1) of the CEA for the alleged wrongs committed by PIMCO. Even if this was a viable legal theory (and it is not -- *see* section B, below) it is inappropriate for Plaintiffs to raise -- or for this Court to consider -- these new, unpled allegations at this stage of the proceedings.

"[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) (citations omitted). An alleged agency relationship, like any other fact, must be included in the pleadings; as recognized by Judge Alesia, "[w]hile the existence and extent of the agency relationship is a question of fact, the plaintiff must sufficiently allege that an agency relationship existed in order for his complaint to survive a Rule 12(b)(6) motion to dismiss." *Cumis Ins. Soc'y, Inc. v. Peters*, 983 F. Supp. 787, 796 (N.D. Ill. 1997) (Alesia, J.).

In their Complaint, Plaintiffs fail to allege either an agency relationship or the factual predicates that would be required to demonstrate an agency relationship.[2] Plaintiffs' belated realization that they have failed to adequately allege a claim against PIMCO Funds

---

[2] Nor do Plaintiffs explain how PIMCO's newly-alleged status as an agent for PIMCO Funds possibly can be reconciled with the factual allegation in the Complaint that PIMCO "managed and controlled" PIMCO Funds. *See Cumis*, 983 F. Supp. at 796 (noting that one of the two factors used under Illinois law to determine the existence of an agency relationship is "whether *the principal* has the right to control the manner and method in which *the agent* performs his services").

- 5 -

cannot be cured by permitting them to rely on new and unpled allegations during motion practice.

  **B. In Any Event, Plaintiffs' Newly-Asserted "Agency" Theory Fails As A Matter Of Law**

  In support of their new contention that PIMCO Funds, as the alleged "principal" of PIMCO, is liable for PIMCO's actions because Section 2(a)(1) of the CEA imposes respondeat superior liability based on the actions of an agent, plaintiffs cite to two inapposite cases. *See* Pl. Mem. at 24. *Cange v. Stotler & Co.,* 826 F.2d 581 (7th Cir. 1987) involved a suit by an investor who claimed that his broker conducted unauthorized trading using the investor's account; the broker's employer, a brokerage firm, was held liable under Section 2(a)(1). *Rosenthal & Co. v. Commodity Futures Trading Comm'n*, 802 F.2d 963 (7th Cir. 1986), was a CFTC action alleging fraud by a brokerage manager who allegedly cheated his customers by failing to send them required warnings; the commission house through which the manager traded was held liable under Section 2(a)(1). Both of these cases involved an employer's liability for an employee's bad actions *towards* a client. Neither of these cases has anything to do with the type of incoherent "agency" theory that Plaintiffs purport to assert, in which a client is *held liable* for the actions of its supposed agent at the same time the agent allegedly "manages and controls" the client. In fact, PIMCO Funds' research (and presumably that of Plaintiffs as well) failed to uncover <u>any</u> cases that apply the agency liability provisions of Section 2(a)(1) to a market manipulation case.

  This is not a surprising result. As noted above, the Seventh Circuit has held that private claims for market manipulation require both intent and ability to manipulate the market. Applying Section 2(a)(1) of the CEA to a market manipulation claim would negate the Seventh Circuit's specific intent requirement and lead to frivolous lawsuits in which innocent clients are

legally liable for their broker or advisor's acts.  Such a result would be even less warranted where, as here, the facts pled in the Complaint itself demonstrate that PIMCO Funds had neither the intent nor the ability to manipulate the market.

## CONCLUSION

For the foregoing reasons, as well as those set forth in PIMCO Funds' moving papers and in the papers filed by PIMCO (which are incorporated herein by reference), PIMCO Funds respectfully requests that the Court dismiss the Corrected Consolidated Amended Class Action Complaint as against it with prejudice.

Dated:  March 10, 2006

Respectfully submitted,

By:  /s/ Blake T. Hannafan

| | |
|---|---|
| David A. Kotler | Michael T. Hannafan |
| William Gibson | Blake T. Hannafan |
| Dechert LLP | Nicholas A. Pavich |
| Princeton Pike Corporate Center | Michael T. Hannafan & Assocs., Ltd. |
| P.O. Box 5218 | One East Wacker Dr. |
| Princeton, NJ 08543-5218 | Suite 1208 |
| (609) 620-3200 | Chicago, IL. 60601 |
| (Application for admission *pro hac vice* pending) | 312-527-0055 |
| | **Attorneys for Defendant PIMCO Funds** |

## CERTIFICATE OF SERVICE

       I hereby certify that on March 10, 2006, I electronically filed **DEFENDANT PIMCO FUNDS' REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS** using the ECF System and I hereby certify that I have mailed by United States Postal Service the document to the following non-ECF participants:

Vincent Briganti
Lowey Dannenberg Bemporad & Selinger, P.C.
One North Lexington Ave.
11th Floor
White Plains, NY 10601

Louis F. Burke
Louis F. Burke, P.C.
460 Park Ave.
21st Floor
New York, NY 10022

Christopher Lovell
Lovell, Stewart Halebian, LLC
500 Fifth Ave.
New York, NY 10110

                                                               /s/ Blake T. Hannafan