IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEF A. KOHEN, BREAKWATER TRADING LLC, AND RICHARD HERSHEY, | : : : | |
| Plaintiffs, | : : | No. 05 C 4681 |
| v. | : : | Hon. Ronald A. Guzman |
| PACIFIC INVESTMENT MANAGEMENT COMPANY LLC, AND PIMCO FUNDS, | : : | |
| Defendants. | : : | |

**DEFENDANT PIMCO FUNDS' SUPPLEMENTAL MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

There are only two theories by which Plaintiffs have sought to impose liability against

PIMCO Funds: (i) aiding and abetting PIMCO's alleged direct market manipulation, under

Section 22 of the Commodity Exchange Act, 7 U.S.C. § 1, *et seq.* ("CEA"); and (ii) respondeat

superior liability for PIMCO's conduct as PIMCO Funds' alleged agent, under Section

2(a)(1)(B) of the CEA.[1]  PIMCO Funds submits this supplemental memorandum of law to

address recent federal decisions that have clarified these two distinct theories of liability.

Plaintiffs originally proceeded against PIMCO Funds on an aiding and abetting theory.

Their Amended Complaint only mentions PIMCO Funds by name once, in one paragraph, which

alleges that PIMCO "managed and controlled PIMCO Funds and caused PIMCO Funds' conduct

at issue herein."  Am. Compl. ¶ 23.  Thereafter in their complaint, Plaintiffs rely upon Section 22

---

[1]  PIMCO Funds did not engage in any of the trading at issue and Plaintiffs therefore are not proceeding on a
direct manipulation claim against it under Section 9 of the CEA.

of the CEA as the basis for PIMCO Funds' alleged aiding and abetting liability. *Id.* ¶ 102, 105-06. Accordingly, when PIMCO Funds moved for summary judgment, it attacked this theory, arguing Plaintiffs' claims must fail because they could not produce any evidence of PIMCO Funds' knowledge or intent to manipulate the market. In their opposition, Plaintiffs sought to avoid altogether their burden to prove the requisite intent, arguing that PIMCO's intent could be imputed to PIMCO Funds under a different theory, i.e., that PIMCO was PIMCO Funds' agent. The recent case law described in this memorandum makes clear that Plaintiffs' efforts to confuse and conflate these different theories must fail as a matter of law.

Specifically, these recent decisions make clear that aiding and abetting and respondeat superior claims under the CEA are separate and distinct, with different elements of proof. First, these opinions make clear that aiding and abetting liability turns on proof of the knowledge and specific intent of the alleged aider and abettor, a burden that cannot be satisfied by imputation of the intent of a purported direct market manipulator. This Court therefore should not accept Plaintiffs' invitation to ignore undisputed evidence showing that PIMCO Funds had no intent to manipulate the Treasury futures market. Second, these opinions clearly demonstrate that Plaintiffs' belated effort to pursue a respondeat superior claim against PIMCO Funds must also fail, because under this theory, Plaintiffs must demonstrate that PIMCO Funds controlled PIMCO. This proposition is flatly contradicted by Plaintiffs' complaint, as noted above, and by the record. There is not a scintilla of evidence that would show PIMCO Funds' control of the Treasury futures and Treasury note investments at issue in this case. In fact, precisely the opposite is true -- as Plaintiffs correctly alleged in their complaint, PIMCO managed and controlled any relevant conduct by PIMCO Funds. PIMCO Funds therefore respectfully submits that it is entitled to summary judgment on all claims.

2

## ARGUMENT

I.   **PLAINTIFFS CANNOT SUSTAIN THEIR AIDING AND ABETTING CLAIM AGAINST PIMCO FUNDS**

To prevail on a claim for aiding and abetting manipulation under Section 22 of the CEA, a plaintiff must prove that the defendant: (1) had knowledge of the direct wrongdoer's intent to commit a violation of the CEA; (2) had the intent to further that violation; and (3) committed some act in furtherance of the direct wrongdoer's objective.[2] In ruling on PIMCO Funds' Rule 12(b)(6) motion, the Court necessarily and properly accepted as true Plaintiffs' allegations that PIMCO Funds "had the requisite intent with regard to aiding and abetting a violation of the CEA." *Kohen*, 244 F.R.D. at 482. Under Rule 56, of course, Plaintiffs have a much higher burden, which current case law makes clear they cannot meet. Specifically, because there is no genuine factual dispute that PIMCO Funds *itself* either had knowledge of PIMCO's alleged market manipulation or had the "requisite intent" to further that alleged manipulation, Plaintiffs' aiding and abetting claim must be dismissed.

A.   **Plaintiffs Cannot Prove That PIMCO Funds Had Knowledge Of PIMCO's Alleged Market Manipulation**

In their opposition to PIMCO Funds' summary judgment motion, Plaintiffs cited literally no evidence demonstrating that PIMCO Funds had any actual knowledge of PIMCO's alleged manipulation of the Treasury futures market in May/June 2005. After more than a year of discovery (including millions of pages of document production and dozens of depositions), the sole evidence of PIMCO Funds' purported knowledge that Plaintiffs could muster was a one sentence, *ipse dixit*, conclusion from one of their experts that PIMCO Funds "had strong reason

---

[2]   *See Kohen v. Pacific Inv. Mgmt. Co.*, 244 F.R.D. 469, 482 (N.D. Ill. 2007) (citing *Damato v. Hermanson*, 153 F.3d 464, 473 (7th Cir. 1998)), *aff'd*, 571 F.3d 672 (7th Cir. 2009); *In re Amaranth Natural Gas Commodities Litig.*, 612 F. Supp. 2d 376, 385 (S.D.N.Y 2009).

to know" of the alleged manipulation by PIMCO. *See* Plaintiffs' Response in Opposition to

Defendant PIMCO Funds' Local Rule 56.1 Statement of Uncontested Material Facts ("Plaintiffs'

Local Rule 56.1 Response"), at ¶ 7. This testimony is inadmissible for all of the reasons set forth

in PIMCO Funds' Motion to Exclude Expert Testimony of James Rickards. But even if the

Court considers this opinion, any suggestion that PIMCO Funds *should have known* about any

market manipulation is plainly insufficient under the current law. Plaintiffs' expert's opinion is

at most a claim of constructive knowledge, which is legally insufficient to demonstrate actual

knowledge under the aiding and abetting provision of the CEA. *See Damato*, 153 F.3d at 473

n.12 (7th Cir.1998); *Amaranth*, 612 F. Supp. 2d at 390.

**B.   Plaintiffs Cannot Establish That PIMCO Funds Had The Specific Intent To Aid And Abet PIMCO's Alleged Market Manipulation.**

In opposing PIMCO Funds' summary judgment motion, Plaintiffs' sole argument with

respect to the intent element of their aiding and abetting claim is that "PIMCO's manipulative

intent is imputed to PIMCO Funds." Plaintiffs' Consolidated Memorandum in Opposition to

Defendants' Motions for Summary Judgment ("Opp.") at 19. Plaintiffs did not cite any case law

to support their imputation argument, nor is PIMCO Funds aware of any. To the contrary, as a

district court in the Southern District of New York recently reaffirmed, specific intent -- as

opposed to the imputed intent sought by Plaintiffs -- is a required element to establish aiding and

abetting liability under the CEA. *Amaranth*, 612 F. Supp. 2d at 385-96.

The *Amaranth* litigation is remarkably similar to the present case in many dimensions:

there, the same Plaintiffs' counsel as in this case brought direct market manipulation claims

under the CEA against an investment adviser, together with aiding and abetting and respondeat

superior claims against the several passive investment vehicles that held the funds invested by

the adviser (in that case, hedge funds). Just as in this case, the plaintiffs in *Amaranth* sought to

4

hold the funds liable for the alleged manipulation by the funds' investment adviser. Yet, in analyzing those claims in the context of a motion to dismiss, the *Amaranth* court made clear that intent is an element of an aiding and abetting claim that must be proven -- and nowhere suggested that this element could be satisfied by imputing the investment adviser's intent. *Id.*

Given Plaintiffs' exclusive reliance on their argument that PIMCO's alleged manipulative intent should be imputed to PIMCO Funds, they did not even try to cite record evidence of any intent on the part of PIMCO Funds to aid or abet PIMCO's alleged market manipulation. At this point, the time for that effort under Rule 56 has long passed and under *Amaranth* and the other cases previously cited Plaintiffs' claims must be dismissed.[3]

## II. PLAINTIFFS CANNOT ESTABLISH THAT PIMCO FUNDS IS VICARIOUSLY LIABLE FOR PIMCO'S ALLEGED MARKET MANIPUATION UNDER A RESPONDEAT SUPERIOR THEORY

To hold a defendant vicariously liable for market manipulation under the CEA, it is now clear that a plaintiff must apply common-law principles of agency to prove that the defendant is the principal of an agent who engaged in direct market manipulation under the CEA. *See* 7 U.S.C. § 2(a)(1)(B); *Commodity Futures Trading Comm'n v. Gibraltar Monetary Corp.*, __ F.3d __, 2009 WL 2150900 at * 5-6 (11th Cir. July 21, 2009); *Amaranth*, 612 F. Supp. 2d at 393.

---

[3]     We note that the only relevant evidence about PIMCO Funds itself actually confirms the propriety of this outcome. Plaintiffs' own expert, Charles Robinson, has demonstrated that PIMCO Funds would necessarily have acted against its own financial interest by intending to aid and abet PIMCO's alleged manipulation. According to the data assembled by Mr. Robinson, during the seven week class period in this case, there were more than a dozen different occasions on which one of the PIMCO Funds held a net short position in the June 2005 Treasury futures contract *See* Exh. 1 to Robinson Report, attached as Exh. 3 to Declaration of Steve Sexton submitted in connection with Defendant PIMCO's Statement of Undisputed Facts. According to Plaintiffs' data, PIMCO Funds held substantial short positions (in excess of $200 million) on May 24 and 25, 2005 (*id.*) -- which are the very same dates on which Plaintiffs' experts aver that the alleged price artificiality was at its peak (*see* Plaintiffs' Local Rule 56.1 Response at ¶ 28). Therefore, as Plaintiffs must concede, certain of PIMCO Funds' holdings were in the same position as the class members' and in the exact opposite position of those long positions that Plaintiffs allege PIMCO used to manipulate the market. Plaintiffs do not offer any explanation of how PIMCO Funds logically could have the intent to aid and abet PIMCO's alleged manipulation of the Treasury futures market while at the same time having its funds in the position of potential victims of that supposed plan.

Although not pled anywhere in their amended complaint, Plaintiffs' opposition to PIMCO Funds' summary judgment motion suggests that PIMCO Funds can be held vicariously liable for PIMCO's alleged market manipulation on a respondeat superior theory. *See* Opp. at 19. This belated theory should be rejected on its face, since it is both too late[4] and directly contrary to the factual allegations in their operative pleading. *See Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997) (stating that "[a]llegations in a complaint are binding admissions"); *Soo Line R.R. Co. v. Saint Louis Sw. Ry.*, 125 F.3d 481, 483 (7th Cir. 1997) (stating that there is a "well-settled rule that a party is bound by what it states in its pleadings" and that "[j]udicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them").

As noted above, the theory of Plaintiffs' case to date has been that PIMCO controlled not only the investments it made in May/June 2005 in Treasury futures and Treasury bonds that are at issue, but also controlled PIMCO Funds itself. *See* Am. Compl. ¶ 23.[5] For their respondeat superior claim, however, the current case law makes clear that Plaintiffs would have to prove the exact opposite, i.e., that PIMCO Funds controlled PIMCO. Even if the Court were inclined at this point to permit Plaintiffs to reverse course, any such effort would be futile because there is no evidence to support this claim.

## A.   The Common Law Provides The Applicable Standard Of Agency Under The CEA.

The two federal courts within the past year to squarely address the legal standard governing respondeat superior liability under Section 2(a)(1)(B) of the CEA both held that, to

---

[4]   *See Gurley v. Sheahan*, 2009 WL 2178685 at *10 (N.D. Ill July 21, 2009) ("[T]he summary judgment stage 'is too late in the day to be adding new claims.'") (citing *Auston v. Schubnell*, 116 F.3d 251, 255 (7th Cir. 1997)).

[5]   Plaintiffs also make the same contention that "PIMCO controlled PIMCO Funds" in their opposition to PIMCO Funds' summary judgment motion. *See* Opp. at 3.

sustain such a claim, a plaintiff must apply common-law principles of agency to prove that the defendant is the principal of an agent who engaged in direct market manipulation under the CEA.[6] In July 2009, the Eleventh Circuit issued a decision in a case brought by the CFTC that squarely addressed this issue. After thoroughly analyzing the text of the CEA and its legislative history, the Court held (over the CFTC's argument) that Congress intended Section 2(a)(1)(B) to codify common-law standards of agency. Critically, the Eleventh Circuit specifically held that any such standard includes the necessary element of control of the agent by the principal. *Gibraltar Monetary Corp.*, 2009 WL 2150900 at \*\*5-6. Similarly, only months earlier, the *Amaranth* Court also held that the proper test for determining respondeat superior liability under Section 2(a)(1)(B) is the common law of agency, which requires control by the principal over key aspects of the agent's undertakings. *Amaranth*, 612 F. Supp. 2d at 385.

**B.    Plaintiffs Cannot Establish That PIMCO Was PIMCO Funds' Agent Because PIMCO Funds Indisputably Did Not "Control" PIMCO.**

The investment advisory contract between PIMCO Funds and PIMCO provides that California law governs the parties' relationship. *See* Contract ¶ 11.[7] Under California common law, "the significant test of an agency relationship is the principal's right to control the activities of the agent." *Violette v. Shoup*, 20 Cal. Rptr.2d 358, 363 (Cal. Ct. App. 1993). Where the

---

[6]    The Seventh Circuit has never set forth a concrete standard for a respondeat superior claim under Section 2(a)(1)(B) or considered whether any such standard requires the plaintiff to establish that the principal controls the agents. *See Gibraltar Monetary Corp.*, 2009 WL 2150900 at \*7, n. 13 (explaining that the Seventh Circuit has confusingly used a mixture of standards without ever explicitly addressing control). The closest opinions date from the 1980's and do not define the standard applicable in this case. *Rosenthal & Co. v. Commodity Futures Trading Comm'n*, 802 F.2d 963 (7th Cir. 1986); *Stotler and Co. v. Commodity Futures Trading Comm'n*, 855 F.2d 1288 (7th Cir. 1988). In *Rosenthal*, the Seventh Circuit did find that Section 2(a)(1)(B) departs from the common law, but only in two ways which have no bearing on the element of control as a necessary predicate for establishing agency. 802 F.2d at 966. Thus, application of the standard adopted by the courts in *Gibraltar Monetary Corp.* and *Amaranth* would not be inconsistent with any prior decision of the Seventh Circuit.

[7]    *See Kafka v. Bellevue Corp.*, 999 F.2d 1117, 1121 (7th Cir. 1993) ("Federal courts apply the choice of law test applicable in the state in which the court sits. . . . Illinois courts apply the law that the parties understood would govern the case.").

purported principal dictates only the "results of the work," but does not control the "means by which" the work is accomplished, there can be no finding of agency. *Kim v. Sumitomo Bank of Cal.*, 21 Cal. Rptr. 2d. 834, 839 (Cal. Ct. App. 1993) (without evidence that bank controlled disbursement agent, there could be no finding that disbursement agent was bank's agent); *Tieberg v. Unemployment Ins. App. Bd.*, 88 Cal. Rptr. 175, 177 (Cal. 1970) (finding agency where producers "exercised considerable control over the manner and means by which a writer fabricated a teleplay from a story"); *Housewright v. Pacific Far E. Line, Inc.*, 40 Cal. Rptr. 208, 212 (Cal. Ct. App. 1964) ("The most important factor of an agency or employee relationship, as distinguished from an independent contractor, is the *right* to control the manner and means of accomplishing the desired result.") (emphasis in original).

In this case, Plaintiffs cannot establish that PIMCO Funds had the right to control PIMCO's activities, let alone that it exercised any such right. On this issue, each of the following factual propositions is either conceded by Plaintiffs in their response to PIMCO Funds' previously-filed Statement of Undisputed Facts or is genuinely indisputable:

- A group of mutual funds, such as PIMCO Funds, is an investment vehicle that pools money from many investors and invests the money in a variety of securities such as stocks, bonds and money market securities on behalf of its shareholders.

- As a registered investment company pursuant to the Investment Company Act of 1940, 15 U.S.C. § 80a-1, *et seq.* ("ICA"), PIMCO Funds is governed by a board of trustees, the majority of whom are independent, i.e., not affiliated with PIMCO.

- The PIMCO Funds board of trustees makes no investment decisions or trades, but instead engages PIMCO as its independent investment advisor to manage its pool of assets.

- As required by the ICA, PIMCO Funds' relationship with its investment advisor PIMCO during the period of 2005 at issue in this litigation was governed by a written investment advisory contract approved by a majority of the independent trustees.

8

- That investment advisory contract vested PIMCO with full discretion to "make investment decisions for the account of the Funds and Portfolios in accordance with [PIMCO's] best judgment."[8]

- Although PIMCO issued "periodic reports" to PIMCO Funds regarding overall performance of the 70+ individual mutual funds, PIMCO Funds did not receive reports detailing the tens of thousands of different individual securities in which PIMCO had invested on behalf of PIMCO Funds' shareholders.

- As Plaintiffs therefore concede, "[t]he board of Trustees of PIMCO Funds did not have a role in selecting individual investments for the funds". (Emphasis added)[9]

At most, PIMCO Funds can be said to be responsible for determining the overall investment objectives that PIMCO must abide by when exercising its investment discretion. This is therefore a classic case of the purported principal dictating only the "results of the work," but not controlling the "means by which" the work is accomplished. Under the settled California law cited above, these undisputed facts preclude a finding that PIMCO Funds controlled PIMCO and PIMCO Funds therefore cannot be held liable for PIMCO's alleged market manipulation.

---

[8]    A copy of the Contract is attached at Exhibit A to the Declaration of Ernest Schmider submitted in connection with PIMCO Funds' motion for summary judgment.

[9]    *See* Plaintiffs' Local Rule 56.1 Response at ¶ 7.

## CONCLUSION

For the foregoing reasons, as well as those set forth in its prior memoranda and supporting papers, Plaintiffs cannot raise any genuine issue of material fact to support the elements essential to sustain any claim against PIMCO Funds under the CEA. Accordingly, the Court should grant PIMCO Funds' Motion for Summary Judgment.

Dated:     August 19, 2009

David A. Kotler (*pro hac vice*)
Dechert LLP
902 Carnegie Center, Suite 500
Princeton, NJ 08540
Tel: (609) 955-3200

Matthew L. Larrabee (*pro hac vice*)
Dechert LLP
One Maritime Plaza
San Francisco, CA 94111-3513
Tel: (415) 262-4500

Respectfully submitted,

By: /s/ Blake T. Hannafan
Blake T. Hannafan
Michael T. Hannafan
Hannafan & Hannafan, Ltd.
One East Wacker Drive, Suite 2800
Chicago, Illinois 60601
Tel: (312) 527-0055

One of the Attorneys for PIMCO Funds

## CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2009, I electronically filed the foregoing document using the ECF System and I hereby certify that I have mailed by United States Postal Service the document to the following non-ECF participant:

Anne Carol Polaski
Chicago Board of Trade
141 W. Jackson Blvd.
Chicago, IL. 60604

Louis F. Burke
Louis F. Burke, P.C.
460 Park Avenue
21st Floor
New York, NY 10022

Craig Essenmacher
Peggy J. Wedgworth
Lovell, Stewart Halebian, LLC
500 Fifth Avenue
New York, NY 10110

Christopher Lovell
Lovell, Stewart Halebian, LLC
61 Broadway
Suite 501
New York, NY 10006

/s/ Blake T. Hannafan