IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSEF A. KOHEN, BREAKWATER TRADING LLC, and RICHARD HERSHEY, ) ) ) ) Plaintiffs, ) ) *v.* ) ) ) PACIFIC INVESTMENT MANAGEMENT ) COMPANY LLC, and PIMCO FUNDS, ) ) Defendants. ) ) | No. 05 C 4681<br>Judge Ronald A. Guzmán<br>Magistrate Michael T. Mason |

**PLAINTIFFS' RESPONSE TO DEFENDANT PIMCO FUNDS'
SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT……………………………………………………………..1

POINT I.    CONTRARY TO PIMCO FUNDS' MISSTATEMENTS, THE PRIMARY GROUND FOR PIMCO FUNDS' LIABILITY IS DIRECT MANIPULATION IN VIOLATION OF THE CEA…………….2

     A.    In Seeking To Avoid The Lesser Grounds For Its Liability, PIMCO Funds Has Actually Conceded The Facts Which Preclude Summary Judgment On The Primary Grounds For Its Liability…………….2

     B.    PIMCO Funds Conceded That PIMCO Controlled PIMCO Funds' Manipulative Trades And This Concession Suffices To Impute PIMCO's Manipulative Intent To PIMCO Funds………………………………………...3

POINT II.    PIMCO FUNDS IS NOT ENTITLED TO SUMMARY JUDGMENT ON THE ISSUES THAT IT DID NOT KNOW OR HAVE A PROFIT MOTIVE FOR ITS EXTENSIVE CONDUCT……………………………...5

     A.    PIMCO Funds Failed To Inform This Court That William Gross Was Also PIMCO Funds' Executive Officer, Controlled Its Trading, And Specifically Intended To Manipulate………………………………………..6

     B.    Through Mr. Gross, PIMCO Funds Not Only Knew Of Its Positions But Specifically Intended Them To Manipulate June Contract Prices………6

POINT III.    PIMCO FUNDS' SUPPLEMENTAL AUTHORITY IS IRRELEVANT TO THE PRIMARY GROUNDS FOR ITS LIABILITY AND DOES NOT RESCUE IT FROM EVEN THE ALTERNATIVE GROUNDS FOR LIABILITY……………………………………………………………………8

     A.    If The Sole Exhibit Submitted By PIMCO Funds Is Credited, Then Section 2(A)(1)(B) Responsibility For PIMCO's Conduct Is Appropriate Here………………………………………………………………..9

CONCLUSION………………………………………………………………………………10

**PRELIMINARY STATEMENT**

PIMCO Funds made in excess of $572,000,000.00-plus in profits from the $21,000,000,000.00-plus in manipulative positions that it purchased and the other acts it undertook in the June 2005 U.S. Ten Year Treasury Futures Contract ("June Contract").[1]

On its summary judgment motion, PIMCO Funds has failed to mention that PIMCO Funds undertook the acts that effected, and reaped the $572,000,000.00-plus in profits, from the manipulation here.

Indeed, PIMCO Funds has avoided important cases and critical facts in order to pretend (a) that PIMCO Funds supposedly had no knowledge of its manipulative positions, and (b) that the mental state of PIMCO—which controlled PIMCO Funds' trading and other conduct, and specifically intended such conduct to manipulate June Contract prices—supposedly may not be imputed to PIMCO Funds.

Both propositions are false. The law has not tucked PIMCO Funds into a "sweet spot." PIMCO Funds cannot commit all the bad acts, make half a billion dollars-plus in profits, cause the billions of dollars of harm to society, and then escape all liability for its highly profitable bad acts.

In order to try to avoid the controlling law and critical facts here, PIMCO Funds has, in its Supplemental Memorandum of Law in Support of its Motion for Summary Judgment ("Supp. Mem."):

- avoided the primary grounds earlier found by this Court for PIMCO Funds' liability (*Id.* p. 1, *see* Point I *infra*);

---

[1] *Compare* Exhibit 1 to the Affidavit of Charles Robinson ("Robinson Aff.") attached as Exhibits 134-136 to the Declaration of Christopher McGrath ("McGrath Decl.") dated November 28, 2007 and in Support of Plaintiffs' Opposition to Defendants' Motion to Summary Judgment *with* Robinson Ex. 3.

1

- conceded important facts and avoided Plaintiffs' repeatedly-cited cases establishing (or defeating summary judgment on) such facts under such primary grounds for PIMCO Funds' liability (Supp.Mem. p. 1, *see* Pt. IA *infra*);

- continued to assert and created new "facts" that were not mentioned in PIMCO Funds' Local Rule 56.1 Statement of Uncontested Material Facts In Support Of Its Motion For Summary Judgment dated October 17, 2007 ("Rule 56.1 Statement") (Supp. Mem. pp. 7-9, *see* Pt II *infra*); and

- tried to divert this Court's attention from the primary grounds for PIMCO Funds' liability by citing wholly inapposite cases relating to other grounds for PIMCO Funds' liability (Supp Mem. pp. 2-6).

But these supplemental cases do not help PIMCO Funds avoid liability for its extensive manipulative conduct here. *See* Point III *infra*.

**POINT I.** **CONTRARY TO PIMCO FUNDS' MISSTATEMENTS, THE PRIMARY GROUND FOR PIMCO FUNDS' LIABILITY IS DIRECT MANIPULATION IN VIOLATION OF THE CEA**

PIMCO Funds misstates that the "only two theories by which Plaintiffs have sought to impose liability against PIMCO Funds" supposedly are aiding and abetting PIMCO's direct manipulation under § 22(a) of the Commodity Exchange Act ("CEA"), 7 U.S.C. § 25(a), and respondeat superior liability for PIMCO's conduct as PIMCO Funds' agent under CEA § 2(a)(1)(B), 7 U.S.C. § 4. (Supp. Mem. p. 1).

This is wrong. In *Kohen v. Pacific Investment Management Co. LLC*, 224 F.R.D. 469, 481-83 (N.D. Ill. 2007), which is the law of the case, this Court held that "plaintiffs have adequately pleaded that PIMCO Funds had the requisite intent to manipulate prices." *Id*. at 482. "…**In addition**, plaintiffs have sufficiently alleged that PIMCO Funds had the requisite intent with regard to aiding and abetting a violation of the CEA." *Id*. (emphasis supplied).

    **A.** **In Seeking To Avoid The Lesser Grounds For Its Liability, PIMCO Funds Has Actually Conceded The Facts Which Preclude Summary Judgment On The Primary Grounds For Its Liability**

2

PIMCO Funds asserts that Plaintiffs only

allege[] that PIMCO 'managed and controlled PIMCO Funds and caused PIMCO Funds' conduct at issue herein. Am. Cmpl. ¶ 23.

(Supp. Mem. p. 1). Similarly, PIMCO Funds asserts: "[a]s Plaintiffs therefore concede, '[t]he board of Trustees of PIMCO Funds did not have a role in selecting individual investments for the funds'". (Supp. Mem. p. 9).

By its foregoing statements, PIMCO Funds concedes that PIMCO made and controlled PIMCO Funds' trades including the manipulative trades at issue here.

However, PIMCO Funds' foregoing concession that PIMCO controlled its trades—and such control has been supported by ample evidence—suffices to establish PIMCO Funds' primary manipulation violation under the fund cases which Plaintiffs have repeatedly cited but which PIMCO Funds has **never** contested or sought to distinguish. Plaintiffs' Consolidated Memorandum in Opposition to Defendants' Motions for Summary Judgment (Corrected Copy) (Docket No. 465) ("Pl. Opp. Mem.") at 20 nn. 13 & 14, *citing, e.g.,* to *SEC v. Haligiannis*, 470 F.Supp.2d 373 (S.D.N.Y. 2007) (summary judgment imputing investment manager's scienter to fund); *SEC v. Blackwell*, 477 F.Supp.2d 891 (S.D.Ohio 2007) (summary judgment imputing investment manager's intent to trust); *SEC v. Credit First Fund, LP*, 2006 WL 4729240 at *10 n.19 (C.D. Cal. Feb.13, 2006) (imputing controller's intent to fund); *SEC v. Moskowitz*, 1998 WL 524903 at *4 (S.D.N.Y. Aug. 20, 1998).

**B.     PIMCO Funds Conceded That PIMCO Controlled PIMCO Funds' Manipulative Trades And This Concession Suffices To Impute PIMCO's Manipulative Intent To PIMCO Funds**

Despite two opportunities, PIMCO Funds has never sought to distinguish the foregoing cases. *Compare* PIMCO Funds' Reply Brief in Support of its Motion for Summary Judgment ("Reply Br."), dated February 6, 2008, *passim with* Supp. Mem. *passim*.

3

These cases and more recent cases hold that, **if** the fund itself does the bad acts and **if** the person who **controls** the fund's bad acts has unlawful intent, then that unlawful intent is imputed to the fund.[2] Here, PIMCO did control PIMCO Funds' purchases of and failure to liquidate its manipulative June Contract long positions, its taking in excess of $9,000,000,000-plus in manipulative deliveries on such June Contracts (Robinson Ex. 3), and its other bad acts by which Defendants manipulated June Contract prices.[3]

PIMCO'S control of PIMCO Funds' trading decisions, by itself, supplies the "control" necessary to impute PIMCO's unlawful intent to the fund under the foregoing cases as well as more recent cases. *See* cases collected at fn. 2 *supra*. But PIMCO also controlled PIMCO Funds' everyday operations, including paying for and employing, PIMCO Funds' President and chief operating officer Ernest Schmider.[4] See Point II *infra*. This fact, separately and additionally, also satisfies the control element for purposes of imputing the intent of PIMCO and PIMCO Funds. *E.g., Credit First*, 2006 WL 4729240 at *10 & n. 19 (on motion granting preliminary injunction, knowledge and intent imputed to funds where defendant, through two corporations, provided sales agents with information to give to investors and controlled most aspects of the funds' business and operations).

---

[2] *See Haligiannis*, 470 F.Supp.2d at 378-79 (intent imputed to fund on summary judgment where defendant, through a corporation and a limited liability company, controlled the fund "for all relevant purposes," which included making the investments). *See also SEC v. Lyon*, 605 F.Supp.2d 531, 549 (S.D.N.Y. 2009) (defendants' motion for summary judgment on securities fraud charges denied where a reasonable juror could conclude that individual defendant, who was managing partner and chief investment officer of limited partnership fund defendants, and "intimately involved in [the funds'] investing decisions," acted with knowledge and intent); *Compudyne Corp. v. Shane*, 453 F.Supp.2d 807, 825-26 (S.D.N.Y. 2006) (limited partnership fund's motion to dismiss securities manipulation claim denied where individual defendant had the right to trade the fund's assets and was responsible for fund's management, thereby allowing her knowledge and intent to be imputed to fund).
[3] *See* PIMCO Funds' Investment Advisory Contract at ¶4(a).
[4] Plaintiffs' Response In Opposition To Defendant PIMCO Funds' Local Rule 56.1 Statement Of Uncontested Material Facts ("Response to Funds") at ¶3.

4

Therefore, contrary to PIMCO Funds' misstatement of the grounds for its liability, its motion for summary judgment must be denied because the evidence is sufficient to infer that PIMCO Funds itself directly manipulated June Contract prices. That is, the evidence is sufficient to impute PIMCO's manipulative intent to PIMCO Funds because PIMCO controlled PIMCO Funds' trading by which PIMCO Funds itself manipulated June Contract prices and created $572,000,000-plus in profits for itself.

**POINT II.   PIMCO FUNDS IS NOT ENTITLED TO SUMMARY JUDGMENT ON THE ISSUES THAT IT DID NOT KNOW OR HAVE A PROFIT MOTIVE FOR ITS EXTENSIVE CONDUCT**

Next, PIMCO Funds has made new fact assertions[5] and continued to assert that it supposedly did not know of its extremely large positions and extensive other manipulative conduct that extended over many months' time. (Supp. Mem. pp.7-9 and fn. 3). However, PIMCO Funds **failed to assert** in its limited Local Rule 56.1 statement that it did not know about its trades in the June 2005 Contract or the February 2012 note during the May 9 – June 30, 2005 ("Class Period"). *Compare* Rule 56.1 Statement *passim*. PIMCO Funds can**not** obtain summary judgment based upon a fact which it did not assert. *See Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000) (the Court will "limit its analysis of the facts on summary judgment to, evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement").

Plaintiffs have no duty to assert facts in response to a Rule 56.1 assertion that is not made. *Adickes v. S.H. Kress & Co.*, 398 U.S. 114, 160, 90 S.Ct. 1598, 1608 (1970) (non-movant must meet only that which movant puts in issue). But, Plaintiffs did dispute this non-assertion. They have correctly maintained that PIMCO Funds **did** have extensive and immediate

---

[5] For example, the facts asserted or embedded in the first, fourth and fifth bullet points on pp. 8-9 of PIMCO Funds' Supp. Mem. do not appear in PIMCO's initial Rule 56.1 Statement.

5

knowledge of its manipulative trades and other conduct in the June 2005 Contract. *See* Response to Funds at ¶¶4, 7, 8.

### A. PIMCO Funds Failed To Inform This Court That William Gross Was Also PIMCO Funds' Executive Officer, Controlled Its Trading, And Specifically Intended To Manipulate

Why did PIMCO Funds not assert in its Rule 56.1 Statement that PIMCO Funds supposedly did not know of its manipulative trades?

First and foremost, while making all of its non-verified representations to the Court that it supposedly did not know about its manipulative positions, PIMCO Funds has failed to inform this Court that PIMCO CIO William Gross, who founded both PIMCO and PIMCO Funds, was an Executive Officer of PIMCO Funds throughout the Class Period. *Compare* McGrath Decl. Ex. 119; Gross Dep. Tr. at p. 89 *with* PIMCO Funds' Form N-1A filed with the Securities and Exchange Commission ("SEC") on October 31, 2005 at p. 43-44 (listing William H. Gross as an Executive Officer and Senior Vice President of PIMCO Funds) and PIMCO's website at http://www.pimco.com/LeftNav/Bios/Bill+Gross.htm ("Mr. Gross is a founder of PIMCO").[6]

### B. Through Mr. Gross, PIMCO Funds Not Only Knew Of Its Positions But Specifically Intended Them To Manipulate June Contract Prices

Again, Mr. Gross specifically intended to manipulate the prices of the June 2005 Contract. Plaintiffs' Rule 56.1 Statement at ¶14. Mr. Gross had personal knowledge of PIMCO Funds' June Contract positions. *Id.* Mr. Gross personally directed most of PIMCO Funds' trades in the June 2005 Contract and the February 2012 note. *See* McGrath Decl. Ex. 119; Transcript of William Gross Tr. at p. 15; *see also* McGrath Decl. Ex. 134; Robinson Ex. 1 (the Total Return Fund managed by Mr. Gross held the largest positions in the June 2005 Contract of

---

[6] This Court may take judicial notice of disclosures in documents required to be filed with the SEC as facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2$^d$ Cir. 1991).

any PIMCO account during the Class Period). This is so by virtue of Mr. Gross' role as portfolio manager for PIMCO Funds' largest mutual fund, the Total Return Fund, and his position as Chief Investment Officer of PIMCO. *Id*.

In this regard, PIMCO Funds' Initial Rule 26(a)(1) Disclosures dated March 13, 2006 simultaneously misstated that Ernest L. Schmider was "an individual likely to have discoverable information" and improperly failed to list Mr. Gross and other PIMCO Funds employees[7] as PIMCO Funds witnesses who had personal knowledge of the facts. Indeed, unlike Mr. Gross and Mr. Phansalkar (*see* fn. 7 *supra*), Mr. Schmider was not directly involved in the June Contract trading and his listing in the Rule 26(a)(1) disclosure appears to be an attempt by PIMCO Funds to "hide the ball" or hide the witness.[8]

For any or all of the foregoing reasons, PIMCO Funds cannot obtain summary judgment on the basis that it supposedly did not know about the huge manipulative positions that it held for an extended period.[9]

---

[7] For example, Mr. Mohan V. Phansalkar was also a PIMCO Funds Executive Officer. *See* PIMCO Funds' Form N-1A at p. 43.
  Mr. Phansalkar had direct knowledge of PIMCO Funds' trades in the June 2005 Contract. McGrath Decl. Ex. 51, 78, 121 at pp. 62, 124. Mr. Phansalkar was a Managing Director at PIMCO. *See* PIMCO Funds' Form N-1A at p. 43. He participated in conversations with PIMCO portfolio managers and regulators concerning PIMCO's activities in June 2005 Contract. McGrath Decl. Ex. 51, 78, 121 at pp. 62, 124.

[8] Even Mr. Schmider—the best that PIMCO Funds could do in improperly misidentifying its witnesses who supposedly had personal knowledge of the facts—admitted (a) that he was employed by PIMCO as a Managing Director, (b) received his paycheck from PIMCO, not PIMCO Funds, and (c) did not know whether he was appearing for deposition on behalf of PIMCO or PIMCO Funds. Schmider Tr. at pp. 11 and 15; McGrath Decl. Ex. 124; Plaintiffs' Rule 56.1 Statement In Response to PIMCO Funds at ¶4.
  How "separate" are PIMCO and PIMCO Funds if the latter's own President is paid for, is an officer of, and does not know whether he is acting on behalf of PIMCO or PIMCO Funds? Indeed, as someone paid at and by PIMCO, Mr. Schmider ultimately reported to and was controlled by Mr. Gross.

[9] Also, PIMCO Funds implies that it supposedly had no motive to manipulative because it also held small short positions in the June Contract.
  First, PIMCO Funds profited by $572,000,000.00-plus from the manipulation of prices. *See* fn. 1 *supra*.

**POINT III. PIMCO FUNDS' SUPPLEMENTAL AUTHORITY IS IRRELEVANT TO THE PRIMARY GROUNDS FOR ITS LIABILITY AND DOES NOT RESCUE IT FROM EVEN THE ALTERNATIVE GROUNDS FOR LIABILITY**

PIMCO Funds' supplemental authority consists of three decisions:

*Gibraltar***.** As to its liability under the agency doctrine of respondeat superior, PIMCO Funds cites *Commodity Futures Trading Comm'n v. Gibraltar Monetary Corp*., ___ F.3d ___, 2009 WL 2150900 (11th Cir. July 21, 2009) ("*Gibraltar*"), wherein the Eleventh Circuit analyzed the application of CEA § 2(a)(1)(B) under common law principles and determined that control was insufficiently shown to permit a finding of agency. Among the indicia of control found wanting in *Gibraltar* were the sharing of employees and the supervision or control of trading strategies, 2009 WL 2150900 at *6, evidence which Plaintiffs have demonstrated here.

*Amaranth.* As to agency liability, *In re Amaranth Natural Gas Commodities Litig*., 612 F.Supp.2d 376 (S.D.N.Y. 2009) ("*Amaranth*") requires, as PIMCO Funds ultimately acknowledges, control only "over key aspects of the agent's undertakings," *id*. at 385, which Plaintiffs have sufficiently demonstrated on this motion. To extent that the district court in *Amaranth* relied on the common law to find a requirement of control, its analysis runs afoul of the Second Circuit's in *Guttman v. CFTC*, 197 F.3d 33, 39 (2d Cir. 1999), which requires only that the agent be "acting for" the principal in making illegal trades.

*Gurley.* As to PIMCO Funds' argument, not made in the prior three years, that its liability under respondeat superior must be rejected as untimely raised, PIMCO Funds cites *Gurley v. Sheahan*, 2009 WL 2178685 (N.D.Ill. July 21, 2009) ("*Gurley*"), a case involving myriad and unsupported *pro se* prisoner claims which Judge Pallmeyer fully considered, except for those claims not pleaded in the complaint "**or explored in discovery**." *Id*. at *1 (emphasis supplied).

The above cases have nothing to do with the primary grounds for PIMCO Funds' liability. *See* Points I and II *supra*. *Gibraltar* and *Amaranth* do relate to the remaining grounds for PIMCO Funds' liability: responsibility under Section 2(a)(1)(B) of the CEA, and aiding and abetting manipulation. But these decisions are neither binding nor persuasive authority.

Indeed, both *Amaranth* and *Gibraltar* are contrary to the controlling decisions of the Seventh Circuit. *Rosenthal & Co. v. Commodity Futures Trading Comm'n*, 802 F.2d 963, 966, 969 (7th Cir. 1986) (Posner, J.); *Stotler & Co. v. CFTC*, 855 F.2d 1288, 1292 (7th Cir. 1988)

---

Second, the reason that it so profited was that 95%-99% of PIMCO Funds' June Contract positions (depending on the exact time) were long positions not short positions. *See* McGrath Decl. Ex. 134 and 135; Robinson Exhibit 1.

8

(same); *Cange v. Stotler and Co., Inc.*, 826 F.2d 581, 589 (7th Cir. 1987) (same). These cases hold that – contrary to PIMCO Funds' argument -- the inquiry under Section 2(a)(1)(B) of the CEA is not to the common law but to the policies of the CEA to deter wrongdoing and multiple concepts of agency.[10] *E.g., Rosenthal*, 802 F.2d at 969 ("The ascription of agency is a purposive, policy-oriented act rather than an exercise in semantics."). Thus, in this Circuit, if the agent has acted "within the scope of his employment or office," as broadly construed under the remedial policies of the CEA, strict liability under respondeat superior is imposed without regard to the principal's control over, or **even knowledge** of, the agent's acts. *E.g.*, *Rosenthal*, 802 F.2d at 966 (affirming Section 2(a)(1)(B) where elements of agency were lacking).

> **A. If The Sole Exhibit Submitted By PIMCO Funds Is Credited, Then Section 2(A)(1)(B) Responsibility For PIMCO's Conduct Is Appropriate Here**

The sole exhibit submitted by PIMCO Funds in support of its motion for summary judgment was the May 5, 2000 PIMCO Funds Investment Advisory Contract with PIMCO LLC (as restated August 19, 2003). In this contract, PIMCO Funds entrusts PIMCO to manage its investments. *See* Investment Advisory Contract ¶ 4(a). If this exhibit is credited as portraying an accurate picture of the PIMCO-PIMCO Funds relationship, then PIMCO "acted for" PIMCO Funds within the meaning of Section 2(a)(1)(B) and *In re Glass*, 1996 WL 518121 at *8. *See also Cange*, 826 F.2d at 589.

---

[10] *See also In re Glass*, 1996 WL 518121 at *8 (CFTC Sept. 11, 1996) ("[i]t is generally known that [the identical predecessor of ] this section is grounded in the theory of common law respondeat superior, yet intended to reach a wider range of relationships.").
  Indeed, the wording of Section 2(a)(1)(B) is broader than agency:
  The act, omission, or failure of any ***official, agent, or other person*** acting for any individual, association, partnership, corporation, or trust within the scope of his employment or office shall be deemed the act, omission, or failure of such individual, association, partnership, corporation, or trust, as well as of such ***official, agent, or other person***.
(emphasis supplied).

9

And in the opposition to summary judgment, Plaintiffs so argued in the alternative. *See* Pl. Opp. Mem. at 19-20. If, for any reason, the evidence does not support the foregoing grounds for PIMCO Funds' liability (*see* Points I and II *supra*), then, at a minimum, PIMCO Funds' own exhibit establishes its Section 2(a)(1)(B) responsibility for PIMCO's conduct, intent and violation.[11]

To any extent that PIMCO Funds is not liable under the foregoing theories, then its extraordinary assistance and knowledge precludes summary judgment on Plaintiffs' claim that PIMCO Funds aided and abetted manipulation.[12]

## CONCLUSION

PIMCO Funds' motion for summary judgment should be denied in all respects.

Dated: September 2, 2009

---

[11] PIMCO Funds relies on *Gurley,* which holds merely that a party may not create material issues for trial by making new allegations in his summary judgment brief which were not the subject of discovery, to argue for the first time in this case that the alternative agency grounds for its liability should not be considered. (Supp. Mem. p. 6).
 But Plaintiffs' agency theory has been known to PIMCO Funds for more than two years and was not complained of by PIMCO Funds until now.
 Fed. R. Civ. P. 15(b) provides for a motion "at any time" by "a party" to amend the pleadings as necessary to conform to the evidence. *Torry v. Northrup Grumman Corp.*, 399 F.3d 876, 878 (7th Cir. 2005) ( "[t]he rules contemplate that the complaint will be superseded by pretrial orders (*see* Rule 16(e)), which among other things will define the issues for adjudication."); *Akrabawi v. Carnes Co.,* 152 F.3d 688, 693 (7th Cir. 1998) (no prejudice in allowing amendment of answer to assert new legal theory on last day of trial where plaintiff had known of and addressed the issue); *Winger v. Winger*, 82 F.3d 140, 144 (7th Cir. 1996) ("the Federal Rules of Procedure create [a system] in which the complaint does not fix the plaintiff's rights but may be amended at any time to conform to the evidence") (citations omitted).
 Plaintiffs are moving to add this alternative theory to the complaint. Therefore, PIMCO Funds' new (and untimely) argument as to agency liability should be rejected.

[12] As to aiding and abetting, PIMCO Funds' blunderbuss citation to 11 pages of the *Amaranth* decision nowhere supports a new CEA requirement of "specific intent as opposed to imputed intent." Supp. Mem. at 4. Rather, *Amaranth* recognized that actual intent could be inferred from circumstances which made it plausible, and that recklessness, which satisfied the requirement for manipulative intent, was properly inferred from the circumstances pleaded. 612 F.Supp.2d at 390. *Amaranth* does not, contrary to PIMCO Funds' suggestion, eliminate circumstantial evidence of knowledge and intent. *Compare* Point II *supra* (PIMCO Funds may not obtain summary judgment on knowledge or intent).

Respectfully submitted,

| **LOVELL STEWART HALEBIAN LLP** | **MILLER LAW LLC** |
|---|---|
| */s/ Christopher Lovell* | */s/ Marvin A. Miller* |
| Christopher Lovell | Marvin A. Miller |
| Gary S. Jacobson | Matthew E. Van Tine |
| Christopher M. McGrath | 115 South LaSalle Street |
| 61 Broadway, Suite 501 | Suite 2910 |
| New York, NY 10006 | Chicago, IL 60603 |
| (212) 608-1900 | (312) 332-3400 |
| | |
| *Lead Counsel for Plaintiffs and Class* | *Local Counsel for Plaintiffs* |

**CERTIFICATE OF SERVICE BY ELECTRONIC MEANS**

      I, Marvin A. Miller, one of the attorneys for plaintiffs, hereby certify that on September 2, 2009, service of the foregoing document was accomplished pursuant to ECF as to Filing Users and I shall comply with LR 5.5 as to any party who is not a Filing User or represented by a Filing User.

                                              */s/   Marvin A. Miller*
                                                Marvin A. Miller