IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSEF A. KOHEN, BREAKWATER TRADING LLC, AND RICHARD HERSHEY, <br><br> Plaintiffs, <br><br> v. <br><br> PACIFIC INVESTMENT MANAGEMENT COMPANY LLC, AND PIMCO FUNDS, <br><br> Defendants. | No. 05 C 4681 <br><br> Hon. Ronald A. Guzman |

**DEFENDANT PIMCO FUNDS' SUPPLEMENTAL REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Plaintiffs' supplemental opposition to PIMCO Funds' summary judgment motion postulates a legal theory that is not cognizable under the Commodity Exchange Act ("CEA"). The CEA provides three types of claims to a private plaintiff seeking redress for allegations of market manipulation. Specifically, a private plaintiff can sue for: (1) direct market manipulation under § 9(a); (2) aiding and abetting a primary violation under § 22(a); or (3) vicarious liability under § 2(a)(1)(B).[1] Here, Plaintiffs cannot produce evidence to prove the elements necessary to establish any of these theories of liability against PIMCO Funds. They therefore have invented a new theory of liability – they claim that they can establish a direct violation of § 9(a) of the CEA by imputing *all of the elements of direct liability* to a party they allege was not the principal of, but instead controlled by, the purported primary violator.[2] As this memorandum will demonstrate, there is no

---

[1] We note, however, that no court has found a defendant vicariously liable for market manipulation under the CEA.

[2] Plaintiffs also seem to suggest that they can collapse the aiding and abetting and vicarious liability provisions of the statute by alleging that intent can be imputed from a primary violator to an aider and abettor. The policy

legal or factual basis for PIMCO Funds to be held liable, directly or otherwise, for market manipulation under § 9(a) of the CEA.[3]

## ARGUMENT

### I. PLAINTIFFS CANNOT SUSTAIN A DIRECT MANIPULATION CLAIM AGAINST PIMCO FUNDS

As this Court well knows, in order to prevail on a direct claim against *PIMCO Funds* for market manipulation under Section 9(a) of the CEA, Plaintiffs must prove that: (1) *PIMCO Funds* (not PIMCO) was able to influence prices; (2) an artificial price existed; (3) the artificial price was caused by *PIMCO Funds* (not PIMCO); (4) *PIMCO Funds* (not PIMCO) specifically intended to cause the artificial price, and (5) Plaintiffs suffered actual damages as a proximate result of *PIMCO Funds'* (not PIMCO's) conduct. *See Kohen v. Pacific Inv. Mgmt. Co., LLC*, 244 F.R.D. 469, 482-84 (N.D. Ill. 2007), *aff'd*, 571 F.3d 672 (7th Cir. 2009).

In their supplemental opposition brief, Plaintiffs claim that they need not establish these elements against PIMCO Funds – Plaintiffs, in fact, previously conceded that they cannot do so because PIMCO Funds itself did not engage in any Treasury Futures trading or in any of the allegedly manipulative acts complained of by Plaintiffs. Instead, Plaintiffs are asking that this Court be the first court *ever* to impute both manipulative intent and purported "bad acts" by an independent investment advisor to the passive fund whose trading it manages, as a means of creating a claim of *direct* manipulation under the CEA. Plaintiffs' novel theory is flatly inconsistent with the CEA provisions that define the limits of this kind of imputed liability – the vicarious

---

rationale behind aiding and abetting liability – punishing a party who does not commit a bad act *itself* but intends the bad act and aids the bad act – would be completely eviscerated by Plaintiffs' theory of imputation.

[3] Plaintiffs misleadingly represent that "PIMCO Funds" made nearly $600 million in profits as a result of the alleged manipulation of the June 2005 Treasury Futures contract. Pl. Supp. Opp. at 1. Not only are Plaintiffs' profit calculations not grounded in reality, but the indisputable fact is that PIMCO Funds itself received not one dollar in "profits". All investment "profits" (as well as all investment losses) are shared by PIMCO Funds' thousands of shareholders, such as teachers, firefighters, and pension funds; PIMCO Funds itself, as a pass-through collective investment company, does not itself keep any such profits.

liability provisions of §2(a)(1)(B). This is therefore an inappropriate circumstance for this Court to become the first forum to impute manipulative intent between *any* two distinct entities under the CEA under *any* theory.

### A. The Cases Relied Upon By Plaintiffs Are Wholly Inapposite.

"[T]here is no counterpart in the securities laws to section 2(a)(1) of the Commodity Exchange Act, that is, no provision creating liability on the basis of respondeat superior." *Rosenthal & Co. v. Commodity Futures Trading Comm'n,* 802 F.2d 963, 967 (7th Cir. 1986). Yet Plaintiffs rely exclusively on cases decided under the federal securities laws to circumvent the mandates of § 2(a)(1)(B); that alone is reason to reject Plaintiffs' latest theory *du jour*. If, as Plaintiffs allege, the manipulative intent of PIMCO Funds' "investment manager and agent" can be attributed to it based on that relationship, Plaintiffs are bound to proceed through the agency provision of the CEA.

Given that Plaintiffs' approach has never been adopted by any court and is inconsistent with the CEA, it is not surprising that the cases they cite are readily distinguishable on numerous other grounds as well. First, Plaintiffs cite six cases for the proposition that "**if** the fund itself does the bad acts and **if** the person who **controls** the fund's bad acts has unlawful intent, then that unlawful intent is imputed to the fund."[4] Pl. Supp. Opp. at 4 (emphasis in original). But in none of these six

---

[4] Plaintiffs argue that the alleged actions and intent of William Gross, the Chief Investment Officer ("CIO") of PIMCO (not PIMCO Funds), separately can be imputed to PIMCO Funds because Mr. Gross also was an officer of PIMCO Funds. Pl. Supp. Opp. at 6-7. This argument fails for at least three separate reasons. First, Plaintiffs previously have conceded that the trading activities at issue in this case were taken by Mr. Gross in his capacity as PIMCO's CIO; as set forth in Paragraph 23 of Plaintiffs' amended complaint, "PIMCO, through William Gross and various other persons, caused PIMCO Funds to purchase the aggregate Ten Year Treasury Note futures contract positions and aggregate February 2012 U.S. Treasury Note holdings alleged herein." The investment advisory agreement between PIMCO and PIMCO Funds similarly confirms that PIMCO was responsible for all trading activities on behalf of PIMCO Funds. *See* Contract ¶ 4. Thus, there is not even a scintilla of evidence in the millions of pages of documents produced and dozens of witnesses deposed in this case that Mr. Gross engaged in *any* activity -- let alone any of the actions challenged by Plaintiffs -- in his capacity as an officer of PIMCO Funds. Second, Plaintiffs cite no authority for the proposition that the actions of a chief investment officer for a mutual fund's investment adviser can be imputed to the mutual fund for purposes of establishing a direct manipulation claim under the CEA, nor are we aware of any. Third, such a leap would ignore the fact that PIMCO Funds, consistent with the Investment Company Act ("ICA"), is

cases did the court do what Plaintiffs now request of this Court – impute the manipulative conduct and intent of an investment adviser of a mutual fund to the separate legal entity of the fund itself.[5] Second, five of the six cited cases do not address market manipulation at all,[6] and while the sixth case does discuss market manipulation (*CompuDyne Corp. v. Shane*, 453 F. Supp. 2d 807 (S.D.N.Y. 2006)), it does not do so under the CEA.[7]

Plaintiffs have argued that the securities laws are inapplicable to the CEA claims in this case, and the Court has previously noted that the elements of securities claims are separate and distinct from the elements of the CEA claims at issue. *Kohen*, 244 F.R.D. at 475. This conclusion is especially compelling here, where Plaintiffs cannot meet the statutory elements of vicarious liability under the CEA, and therefore attempt to create a legal theory from cases decided under statutes that have "no counterpart" to the relevant respondeat superior provisions of the CEA.

### B. Plaintiffs Misrepresent The On-Point Authority That Rejected Their Imputation Theory

In their supplemental opposition brief, Plaintiffs state that the *Amaranth* litigation has "nothing to do with the primary grounds for PIMCO Funds' liability." Pl. Supp. Opp. at 8. Plaintiffs' counsel (who are also lead counsel in *Amaranth*) fails to mention that they made the

---

governed by a Board of Trustees, two-thirds of who are independent from PIMCO – and Mr. Gross is not a member of that Board.

[5] As noted above, Plaintiffs also do not and cannot satisfy their own condition of providing any record evidence that PIMCO Funds committed any acts, let alone any "bad acts."

[6] *See SEC v. Blackwell*, 477 F. Supp. 2d 891, 903 (S.D. Ohio 2007); *SEC v. Moskowitz*, No. 97 Civ. 7174, 1998 WL 524903, at *4 (S.D.N.Y. Aug. 20, 1998); *SEC v. Credit First Fund, LP*, No. CV 05-8741DSFPJWX, 2006 WL 4729240, at *10 n.19 (C.D. Cal. Feb. 13, 2006); *SEC v. Haligiannis*, 470 F. Supp. 2d 373 (S.D.N.Y. 2007); *SEC v. Lyon*, 605 F. Supp. 2d 531, 549 (S.D.N.Y. 2009).

[7] In contrast to the present action, each of the cases cited by Plaintiffs involves unregulated trust accounts or hedge funds that are largely exempt from the stringent regulations of the ICA which explicitly require independence of mutual funds and their investment advisors. Thus, in *CompuDyne*, where a hedge fund was organized as a limited partnership whose general partner was a wholly owned subsidiary of the hedge fund manager, it is not surprising that the court found "inextricable linkage" sufficient to impute allegations of scienter against the manager to the hedge fund in deciding a motion to dismiss a federal securities claim. 453 F. Supp. 2d at 813-814, 823.

same imputation argument in *Amaranth*, i.e., that a manager's allegedly manipulative intent could be imputed to the passive funds that it managed, and even cited the same cases that they cite in their opposition brief. *See* 2007 U.S. Dist. Ct. Motions 7637, at *74 n.35, *75. The *Amaranth* court properly rejected this argument, even within the more plaintiff-friendly confines of a Rule 12(b)(6) motion. Instead, that court only found it appropriate to impute allegations of manipulative intent made against a trader to his employer – a true example of respondeat superior – which is a far cry from the imputation theory that Plaintiffs here are advancing. *See In re Amaranth Natural Gas Commodities Litig.*, 587 F. Supp. 2d 513, 541 (S.D.N.Y. 2008).

## CONCLUSION

For the foregoing reasons, Plaintiffs cannot pursue a direct manipulation claim against PIMCO Funds by attempting to collapse § 9(a) and § 2(a)(1)(B) of the CEA. And, as already established in PIMCO Funds' previous memoranda, PIMCO Funds is entitled to summary judgment on Plaintiffs' aiding and abetting and respondeat superior claims. PIMCO Funds therefore respectfully submits that it is entitled to judgment on all claims in this action.

Dated: September 16, 2009

Respectfully submitted,

By: /s/ Blake T. Hannafan
Blake T. Hannafan
Michael T. Hannafan
Hannafan & Hannafan, Ltd.
One East Wacker Drive, Suite 2800
Chicago, Illinois 60601
Tel: (312) 527-0055

One of the Attorneys for PIMCO Funds

David A. Kotler *(pro hac vice)*
Dechert LLP
902 Carnegie Center, Suite 500
Princeton, NJ 08540
Tel: (609) 955-3200

Matthew L. Larrabee *(pro hac vice)*
Dechert LLP
One Maritime Plaza
San Francisco, CA 94111-3513
Tel: (415) 262-4500

# CERTIFICATE OF SERVICE

    I, Blake T. Hannafan, an attorney, hereby certify that on September 16, 2009, I filed on the ECF System the foregoing **Defendant PIMCO Funds' Supplemental Reply Memorandum in Further Support of Its Motion for Summary Judgment** and thereby served such filing via the Court's ECF Notification system.


    /s/ Blake T. Hannafan


HANNAFAN & HANNAFAN, LTD.
One East Wacker Drive
Suite 2800
Chicago, Illinois 60601
(312) 527-0055