**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

---

|  |  |  |
|---|---|---|
| | : | |
| JOSEF A. KOHEN, BREAKWATER | : | |
| TRADING LLC, and RICHARD HERSHEY, | : | No. 05 C 4681 |
| | : | |
| Plaintiffs, | : | |
| | : | Honorable Ronald A. Guzman |
| v. | : | |
| | : | |
| PACIFIC INVESTMENT MANAGEMENT | : | Magistrate Judge Arlander Keys |
| COMPANY LLC, and PIMCO FUNDS, | : | |
| | : | |
| Defendants. | : | |
| | : | |

---

**PIMCO'S AND PIMCO FUNDS' REPLY MEMORANDUM IN SUPPORT OF
THEIR MOTION FOR LEAVE TO FILE SUR-REPLY**

Defendants Pacific Investment Management Company LLC ("PIMCO") and PIMCO

Funds (together "Defendants") respectfully submit this memorandum in further support of their

Motion for Leave to File a Sur-Reply in response to Plaintiffs' reply brief dated April 27, 2010.

**Argument**

**I.     PLAINTIFFS' CITATION OF HARTZMARK *IS* FUNDAMENTALLY
        MISLEADING.**

In their Opposition Plaintiffs claim that they "made a correct citation to that portion of

Dr. Hartzmark's report that expressly 'recognized' that predictive regression analysis creates a

but-for world that excludes the manipulator's trades."[1]  Hartzmark said no such thing.  On the

contrary, Hartzmark wrote that "none of the plaintiffs' experts provides a counterfactual or '[]

---

[1] Plaintiffs' Opposition to PIMCO and PIMCO Funds' Motion for Leave to File a Sur-Reply
Memorandum ("Opp.") at 2.

but-for world."  (*See* Hartzmark Report ¶ 175 (Opp. at Ex. B).)  Hartzmark could not "recognize"

that "predictive regression analysis creates a but-for world" because he expressly denies that any

of Plaintiffs' experts' analyses had created a "but-for-world."  (*Id.*)

## II. PLAINTIFFS' OPPOSITION HIGHLIGHTS THE FAILURE OF PLAINTIFFS' "CORNER" OR "LONG-LONG" THEORY TO EXCUSE THEIR EXPERTS' FAILURE TO CONDUCT A RELIABLE CAUSATION ANALYSIS.

PIMCO's proposed sur-reply establishes that PIMCO relinquished control over the

CTD's and enabled the shorts to obtain them, by making its holdings of the deliverable supply

available to the market – through purchase/repurchase "repo" agreements.  (Reply at 6-7.)

PIMCO's decision to lend its CTD notes out through the repo market thus negated any asserted

impact that PIMCO's position in the CTD had on the supply of those notes.  (*Id.*)  PIMCO

explained that, in an article he co-authored, Plaintiffs' own expert, Merrick, acknowledged that

making deliverables available through the repo market can alleviate the effects of a squeeze.

(*Id.*)

All of Plaintiffs' assertions in their present Opposition inexplicably ignore this article.

They do so despite the fact that the article itself explains why PIMCO had no control over

whether it would receive the lent notes back – borrowers of the note had an exceptionally

inexpensive option to just keep it.[2]  It is inconceivable that PIMCO would hand this option over

to a market it was trying to coerce.  As noted in PIMCO's proposed sur-reply (at 4), the

regulators here obviously understood this because they likewise encouraged PIMCO's repo'ing

to alleviate market pressure.

---

[2] *See* John J. Merrick Jr., et al., "Strategic Trading Behavior and Price Distortion in a Manipulated Market: Anatomy of a Squeeze," 77 J. Fin. Econ. 171, 214-15 (2005) (Exhibit 5 to Proposed Sur-Reply). In an environment where rates paid on repo transactions are approaching zero percent, as they were here (*see* Pirrong Ex. 7), the cost of failing on the repo – *i.e.*, not returning it to the source (such as PIMCO) – will be negligible.

Plaintiffs say that the indisputable fact (and thus reality) that PIMCO lent its CTD

holdings out via the repo market is a "non-*Daubert*" issue.  But as PIMCO's proposed sur-reply

already showed, Plaintiffs themselves offered their "long-long" theory to justify excusing their

experts' failure – as found by Magistrate Judge Keys – to perform a rigorous quantitative

analysis.  (Proposed Sur-reply at 3.)  Plaintiffs also argue that the Plaintiffs have "disputed"

Defendants' "theories" about the repo market "based on well-recognized and peer reviewed

economic concepts." (Proposed Rebuttal at 4 ¶ 8.)  But Plaintiffs support this proposition by

citing a page of their own brief .[3]  There is nothing on the page Plaintiffs cite (let alone a "well-

recognized" or "peer-reviewed economic concepts") that even discusses the repo market.

## III.   PLAINTIFFS CONCEDE THAT THEY MADE NEW ARGUMENTS IN THEIR REPLY BRIEF.

Plaintiffs admit that they have never cited *In re Linerboard Antitrust Litig.*, 497 F. Supp.

2d 666 (E.D. Pa. 2007) for the proposition for which they now cite it (that their experts need not

separate the impact of lawful conduct from allegedly unlawful conduct) and that they have never

before cited *LePage's Inc. v. 3M*, 324 F.3d 141 (3d Cir. 2003).  (Opp. at 8.)  The issue of the

need to separate the effects of lawful conduct from allegedly unlawful conduct has been a central

issue on these motions and was indentified in Defendants' opening briefs before the Magistrate

Judge.  (PIMCO's Memorandum in Support of Motion to Exclude Certain Expert Testimony of

Dr. Craig Pirrong at 12-13.)  Plaintiffs have no justification for making these legal arguments for

the first time in their reply brief.

Similarly, Plaintiffs also concede that they never argued to the Magistrate Judge that the

Other Large Trader's conduct in opening additional short positions *reduced* artificiality.  (Opp. at

8.)  They also do not (because they cannot) dispute that the argument was not made in their

---

[3] Plaintiffs refer to page 5 of their initial objections, which has no economic literature of any kind apart
from this article.

opening brief in support of their Objections.  However, Plaintiffs argue that they were somehow

justified in making new arguments in their reply brief because PIMCO argued in its response to

Plaintiffs' Objections that Pirrong's conclusions about the impact of the Other Large Trader

versus PIMCO were inconsistent with Plaintiffs' own theory of the case.  In fact, PIMCO

identified this issue in its Pirrong reply brief (*see* PIMCO's Reply Memorandum in Support of its

Motion to Exclude Certain Expert Testimony of Craig Pirrong, at 7 & n.6) and Plaintiffs simply

failed to address the issue in their opening brief.

**IV.    BY DECLINING TO RESPOND IN KIND TO EACH OF PLAINTIFFS'
RECITATIONS OF THEIR VERSION OF THE FACTS, DEFENDANTS ARE
NOT CONCEDING ANYTHING.**

Throughout their opposition, Plaintiffs argue that Defendants "do not contest" various

points, suggesting that Defendants are somehow conceding Plaintiffs' misleading version of the

facts.  (*See, e.g.*, Opp. at 4. & n.3.)  As an initial matter, Defendants in fact did contest these

assertions.  For example, Defendants expressly contested the assertion that Plaintiffs repeat in

their Opposition (at 4) about what the regulators told PIMCO.  (*See* Proposed Sur-Reply at 4 n.3

(noting that Plaintiffs' statements about what the regulators said contradict what the regulators

actually said).)

But the problem Plaintiffs create is even more serious. Plaintiffs are willing to accord

themselves essentially unlimited pages and space to make misleading factual claims that are

unsupported by the citations Plaintiffs offer.  There is no way to refute them point by point other

than by adopting the same approach, yet without such a response Plaintiffs' misstatements are

left unanswered.  The following illustrations show the magnitude of this problem.

*First*, Plaintiffs attach no evidence to support their unfounded assertions that the

regulators "expressly" "warned" PIMCO that its trades were economically irrational and thus

manipulative. (Opp. at 4.)  They cite only to a prior brief which leads to a chain of further

citations.  (*Id.*)  At the end of the chain, there is only a single relevant document and it does not support this assertion.  In a June 15, 2005 email (Exhibit 94 to the Dec. of Christopher M. McGrath filed on 12/18/07 (Doc. 346)), William Lange, a CBOT official, asks a PIMCO trader "how you may handle" a situation in which it would be more profitable to sell at existing prices than to take delivery but "the shorts never show up" – *meaning that the shorts will not buy the contracts PIMCO needs to sell*.   Instead of being an "express warning" that PIMCO's limited liquidation at that time was somehow suspect, this document shows that the regulators understood that PIMCO faced a dilemma in reducing its position because the shorts themselves refused to liquidate.

As another example, Plaintiffs now repeat for the second time their assertion that at peak artificiality PIMCO's CTD position went up.  (Opp. at 4 n.3; Reply at 7-8.)  Having made the assertion at length, Plaintiffs say that Defendants failed to "mention" this point and thus suggest that Defendants have no response.  (Opp. at 4 n.3.)  In fact, Defendants *did* address this point by explaining that Plaintiffs themselves assert that trades will not be correlated immediately with market movements.  (*See* Proposed Sur-Reply at 5.)  Plaintiffs ignore this self-contradiction even though it means that their tests are unreliable and lead to absurd and wildly inaccurate results.

In short, when Plaintiffs assert that PIMCO does not contest a point, their assertions are simply not reliable.  Even more important, Defendants cannot be deemed to have conceded anything when they decline to engage with Plaintiffs in a debate about the facts of the case, an exercise obviously intended by Plaintiffs to distract the Court from the only issue before it, which is the failure of Plaintiffs' experts' *methods,* as found by Magistrate Judge Keys.

## Conclusion

For the foregoing reasons, PIMCO and PIMCO Funds respectfully request that the Court grant Defendants' request to file a sur-reply in response to Plaintiffs' reply brief dated April 27, 2010.

Dated:  May 7, 2010

Respectfully submitted,

By:  /s/ David Boies

LATHAM & WATKINS LLP
Sean M. Berkowitz
Sears Tower, Suite 5800
233 South Wacker Drive
Chicago, IL 60606
(312) 876-7700

Miles N. Ruthberg *(pro hac vice)*
Robert W. Perrin *(pro hac vice)*
633 West Fifth Street, Suite 4000
Los Angeles, CA 90071-2007
(213) 485-1234

BOIES, SCHILLER & FLEXNER LLP
David Boies *(pro hac vice)*
333 Main Street
Armonk, New York 10504
Telephone: (914) 749-8200

Robert B. Silver *(pro hac vice)*
Philip M. Bowman *(pro hac vice)*
Boies, Schiller & Flexner LLP
575 Lexington Avenue, 7th Floor
New York, New York 10022
Telephone: (212) 446-2300

*Counsel for Defendant Pacific Investment Management Company LLC*

DECHERT LLP
David A. Kotler *(pro hac vice)*
902 Carnegie Center, Suite 500
Princeton, NJ 08540
(609) 955-3200

Matthew L. Larrabee *(pro hac vice)*
Dechert LLP
One Maritime Plaza
San Francisco, CA  94111-3513
Tel:  (415) 262-4500

By:  /s/ Blake T. Hannafan

HANNAFAN & HANNAFAN, LTD.
Blake T. Hannafan
One East Wacker Dr., Suite 2800
Chicago, IL 60601
312-527-0055

*Counsel for Defendant PIMCO Funds*

## <u>CERTIFICATE OF SERVICE</u>

I, Robert B. Silver, an attorney, hereby certify that on May 7, 2010, copies of the foregoing PIMCO's And PIMCO Funds' Reply Memorandum In Support Of Their Motion For Leave To File Sur-Reply were served upon all attorneys of record in this matter through the Court's CM/ECF notification system, and also upon the following non-CM/ECF participants:

Louis F. Burke
Louis F. Burke, P.C.
460 Park Avenue, 21st Floor
New York, NY 10022

Anne Carol Polaski
Chicago Board of Trade
141 W. Jackson Blvd., Suite 600
Chicago, IL 60604

<u>/s/ Robert B. Silver</u>

*One of the Attorneys for Pacific Investment Management Company LLC*