1    UNITED STATES DISTRICT COURT
     NORTHERN DISTRICT OF ILLINOIS
2    EASTERN DIVISION

3    ------------------------------------------------------------------x
                                                                        :
4    JOSEF A. KOHEN, BREAKWATER                                         :
     TRADING LLC, and RICHARD HERSHEY,                                  :
5                                                                       :
                                                                        :
6              Plaintiffs,                                              :
                                                                        :
7                                                                       :
          v.                                                            :
                                                                        :    Master File No.
8    PACIFIC INVESTMENT MANAGEMENT                                      :    05 CV 4681
     COMPANY LLC, PIMCO FUNDS,  and                                     :
9    John Does 1-100,                                                   :
                                                                        :    Judge Ronald A. Guzman
10             Defendants.                                              :
                                                                        :
11                                                                      :
     ------------------------------------------------------------------x
12

13

14        **DECLARATION OF THE HONORABLE DANIEL H. WEINSTEIN (RET.)**
             **IN SUPPORT OF PLAINTIFFS' MOTION FOR AN ORDER**
15          **PRELIMINARILY APPROVING PROPOSED SETTLEMENT,**
          **SCHEDULING HEARING FOR FINAL APPROVAL THEREOF, AND**
16           **APPROVING THE PROPOSED FORM AND PROGRAM OF**
                       **<u>NOTICE TO THE CLASS</u>**
17

18

19

20

21

22

23

24

25

26

27

28

---

1        I, Hon. Daniel H. Weinstein (Ret.), hereby declare as follows:

2        1.    From March 2008 through December 2010, I served as the mediator in connection

3   with the proposed settlement of *Kohen, et al. v. Pacific Investment Management Company LLC, et*

4   *al.*, No. 05-CV-4681 (the "Action"). I submit this Declaration in connection with *Plaintiffs'*

5   *Motion for an Order Preliminarily Approving Proposed Settlement, Scheduling Hearing for Final*

6   *Approval Thereof, and Approving the Proposed Form and Program of Notice to the Class*, filed

7   concurrently herewith. I make this declaration based on personal knowledge and am competent to

8   testify to the matters set forth herein.

9        2.    All of the Parties, entities, and individuals who were represented at the mediation

10  sessions or who participated in the negotiations executed a Confidentiality Agreement indicating

11  that the mediation process was to be considered settlement negotiations for the purpose of all state

12  and federal rules protecting disclosures made during such process from later discovery and/or use

13  in evidence. The Parties further agreed that the Confidentiality Agreement extends to all present

14  and future civil, judicial, quasi-judicial, arbitral, administrative or other proceedings. Nothing in

15  my declaration divulges any privileged information. Further, the filing of this declaration does not

16  constitute the waiver of any such confidentiality.

17       3.    From 1982 through 1988, I served as a Judge of the Superior Court of the State of

18  California, County of San Francisco. I also served as an Associate Justice Pro Tem of the

19  California Supreme Court and the First District Court of Appeal.

20       4.    Since retiring from the bench, I have been a full-time mediator. For the past twenty

21  years, I have presided over the mediation of countless disputes, including many complex multi-

22  party disputes throughout the United States. By way of example only, I have mediated dozens of

23  class actions invovling public companies such as Enron, Homestore, Qwest, Adelphia, New

24  Century, Parmalat, Broadcom, Aviva, Marsh & McLennan, and other major New York Stock

25  Exchange and Nasdaq corporations. I have also mediated a host of other types of class actions,

26  including securities actions, ERISA actions, intellectual property actions, environmental cases,

27  subprime litigation, litigation with bankruptcy aspects, and litigation brought by borrowers, credit

28  card customers, insurance purchasers, and air crash victims. Many of the cases involve complex

fact patterns and legal issues, and involve hundreds of millions (or billions) of dollars in claimed damages. They often include numerous plaintiffs and plaintiffs' counsel, as well as numerous defendants (issuers, directors, officers, insurance carriers, professional firms, etc.) and defense counsel. For each of the last ten years, I have assisted parties in forging settlements of complex disputes involving more than one billion dollars in the aggregate.

5. I set forth my background as a mediator above to provide context for the comments that follow, and to demonstrate that my perspective on the settlement of this Action is rooted in significant experience in the resolution of complex litigation. As described below, the Action presented significant and complicated legal, factual and practical issues. The Parties were represented during the mediation process through zealous and able counsel, who negotiated aggressively and at arm's length. I am very strongly of the view that the settlement of the Action reached at the end of the mediation process represents a reasonable and practical resolution of this complex and highly uncertain litigation. The Court, of course, will make determinations as to the "fairness" of the settlement under applicable legal standards. From a mediator's perspective, however, I can say that I unreservedly recommend the settlement that has been reached as reasonable, hard-fought, arm's length, and accurately reflective of the risks and potential rewards of the claims being settled.

6. As detailed below, I oversaw two rounds of mediation in this case, culminating in the parties ultimately reaching a settlement. The initial round of mediation sessions before me occurred in New York on March 20, 2008, and continued in San Francisco on June 2-3, 2008. The parties were unable to reach a settlement agreement at the conclusion of the initial round of mediation sessions.

7. In the Fall of 2010, I had numerous additional discussions separately with each party. The second round of mediation sessions before me occurred in December of 2010, and ultimately culminated in a settlement in which approximately $118,750,000 would be proposed to be conferred on the class, including attorneys' fees and all Class and other expenses.

8. Throughout the first and second mediation processes, I stressed to each party the significant risks of going forward. As the Court knows well, this case triggered strongly contested

DECLARATION OF THE HONORABLE DANIEL H. WEINSTEIN (RET.)

1    debate on many complex factual and legal issues. The possibility of a failure to reach a settlement

2    posed the legitimate concern that significant resources would be consumed in the expense of

3    ongoing litigation. In addition, both plaintiffs and defendants faced specific risks.

4            9.      Plaintiffs faced serious risks regarding whether they would ultimately be able to

5    demonstrate that PIMCO was liable for manipulation in this private action, which was not

6    accompanied by a regulatory enforcement action, including as a result of PIMCO's arguments

7    that:

8            (a) PIMCO had good faith, legitimate bases for its trading strategies, including
                 because (i) PIMCO avoided transferring its position due to aberrational and
9                inverted pricing relationships between futures contracts and solely to protect its
                 clients in light of such aberrational market conditions, (ii) acted to secure best
10               execution for its clients, and (iii) was in nearly daily contact with the regulators
                 disclosing to them its positions in futures and cash instruments, projected plans,
11               and the rationale for its trades;

12
             (b) although PIMCO was alleged to have been "long-long" and to have hoarded the
13               cheapest-to-deliver ("CTD") notes, the fact is that PIMCO reduced its futures
                 position as it acquired CTD notes, largely traded into non-CTD instruments when
14               unable to transfer its position , and, most importantly, in consultation with
                 regulators lent its notes and thereby gave up control of them to the market, while by
15               contrast other noteholders did the opposite and withdrew very large amounts of
                 notes from the lending market;
16

17           (c) the challenged price increases in the June Contract were the product not of PIMCO
                 trades but of aberrational market forces, including so-called exogenous factors
18               (aberrational market conditions including price relationships between the futures
                 contracts) that would have caused the challenged June price increases on their own
19               and without any improper trading by anyone in the June Contract;

20
             (d) Plaintiffs could not demonstrate their claimed amount of damages even if they
21               prevailed on liability, including due to challenges to the adequacy of causation of
                 damages proof; and
22

23           (e) all deliveries were made with CTD notes.

24           10.     In addition, the Magistrate Judge's Order granted most of the requests in PIMCO's

25   *Daubert* motions, and this decision threatened, if upheld by the District Court on an appeal

26   pending at the time of settlement, to preclude Plaintiffs from producing expert evidence on

27   causation and causation of damages, among other things.

28           11.     Importantly, PIMCO's motion for summary judgment was pending at the time of

                                                    3
                       DECLARATION OF THE HONORABLE DANIEL H. WEINSTEIN (RET.)

1   settlement and threatened to eliminate all claims against PIMCO.

2         12.     Even if summary judgment had been denied, I believe that proceeding to trial and a

3   virtually certain appeal would likely have delayed any Plaintiffs' recovery of monetary

4   compensation for many years.

5         13.     The Defendants, too, faced significant risks if their summary judgment motion was

6   denied and the claims proceeded to a jury trial. Particularly of concern was the theoretical size of

7   the underlying damages claim, $632,000,000. In addition, the futures trading at issue in the case

8   presented highly complex and technical financial and economic concepts, all in the context of a

9   jury trial.

10        14.     On December 24, 2010, after additional intensive mediation and negotiation, the

11   Parties reached a settlement on basic terms. As detailed in the superseding Settlement Agreement,

12   the Settlement provides substantial benefits to the Class members. Among other terms, the

13   settlement provides for substantial cash payments to Class members who suffered compensable

14   damages in connection with their trading in the June Contract during the Class Period. The

15   Settlement was negotiated based upon the exclusion from the Class of those persons who had

16   previously opted out.

17        15.     Ultimately, the final settlement terms reflect the realities of PIMCO's desire to

18   avoid the uncertainties associated with a jury trial and to focus on its business, while providing fair

19   compensation to the Class. The cash payments to Class members are substantial, and the Class

20   benefits substantially by avoiding years of potential uncertainty from litigation proceedings and/or

21   appeals that would likely ensue absent a settlement, with uncertain results, and extraordinary fiscal

22   costs to the Parties.

23        16.     In light of the daunting and sophisticated factual, legal, damages, and financial

24   issues involved and the significant time to litigate and negotiate this resolution, I view the total

25   settlement in large part as a testament to the abilities and efforts of a highly talented and

26   committed group of counsel and dedicated principals on both sides. I can state that each

27   settlement term represents a heavily negotiated and arm's-length compromise of disputed claims

28   among experienced and able counsel.

17.    Based on my experience as a mediator, and my specific experiences in overseeing the complicated negotiation process in this case, I believe that the total of approximately $118,750,000, including attorneys' fees and all Class and other expenses, proposed for the Class through the Settlement is fair, reasonable and adequate. There is meaningful monetary consideration flowing to the Class members, with due recognition to the complexity of the facts and legal contentions at issue, the risk presented by PIMCO's substantial arguments that Plaintiffs could lose, and a real threat of years of litigation and appeals. I believe that the Settlement represents the highest settlement amount that the Plaintiffs could have achieved at this time.

18.    Although clearly an issue for the Court to decide, in my view, there is no need for a second opt-out period in light of the prior opt-out opportunity already given. I have particularly considered the protracted nature of this litigation and the benefits to the Class of this settlement balanced against the background of the downside risks Plaintiffs faced from continued litigation. Class members were given the opportunity to exclude themselves from the Class after Plaintiffs' initial motion for Class Certification was granted, with a deadline for exclusion of December 1, 2009. The deadline to make their decision has passed, and only ten members of the Class chose to opt out, confirming the confidence of the Class generally with the representation of Lead and Class Counsel, which I consider to be well justified. If any Class members wished to control the prosecution or settlement of their own claims, they could have opted out or sought to intervene then. The opt-out provisions in the previously mailed notice regarding the Court's certification of the Class clearly advised Class members of their right to opt out of the Class and the procedure to invoke that right. The notice made clear that if Class members decided to remain in the Class, they would be "bound by any resolution of the claims or judgment in this litigation, whether favorable or unfavorable to Plaintiffs and the Class," thus clearly notifying Class members that they would be bound by any "resolution of the claims," like this settlement, *or* by a prospective "judgment in this litigation" in the event that the litigation did not settle. Furthermore, because Class members were already given an opportunity to exclude themselves from the Class, it is in my view, although it is clearly an issue for the Court to decide, appropriate to require that any objector seeking to request a second opportunity to opt out of the class must provide substantially

DECLARATION OF THE HONORABLE DANIEL H. WEINSTEIN (RET.)

1   all the information requested in the Class Notice and identified in the Settlement Agreement and

2   Exhibits. This requirement is critical to permit effectuation of the parties' reasonable

3   compromises, which represent essential terms on which the Settlement is premised, regarding

4   refunds from the Settlement Fund or Termination in the unexpected event that opt-outs are

5   permitted.

6           19.     An important part of my analysis concerned the parties' expert reports about the

7   alleged price artificiality and the parties' arguments about price impact (including Defendants'

8   arguments that the CFTC found that aberrational exogenous market factors caused the price

9   increases in the June 2005 Contract). Thereafter, the Defendants' motion to exclude on *Daubert*

10   grounds the Plaintiffs' alleged price artificiality numbers was denied. Based upon my foregoing

11   analysis as well as my familiarity with how this Settlement was negotiated, the proposed Plan of

12   Allocation is fair and reasonable in each respect. This specifically includes its adjustment

13   providing that, if a Class member's liquidations on both May 24 and May 25, 2005, resulted in

14   more artificiality paid than was received on the opening transactions, then the resulting net alleged

15   artificiality be enhanced by 15 %.

16           20.     In sum, this case involved exemplary work by counsel on both sides. It was a very

17   high risk case for plaintiffs to bring, raising daunting damages and economic liability issues.

18   Therefore, based on my knowledge of the Action, all of the materials provided to me, the

19   extensive efforts of skillful advocacy and arm's-length bargaining of counsel, the intensity of the

20   negotiations, the litigation risks, and the benefits reached in the proposed Settlement I believe that

21   it is a fair, reasonable, and adequate settlement of all of the claims against Defendants, and I

22   respectfully recommend that it be approved by this Court.

23           I declare under penalty of perjury under the laws of the State of California that the

24   foregoing is true and correct. Executed on this 21 day of January, 2011.

25

26

27                             Judge Daniel H. Weinstein (Ret.)

28

DECLARATION OF THE HONORABLE DANIEL H. WEINSTEIN (RET.)