UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

-----------------------------------------------------------------------x

JOSEF A. KOHEN, BREAKWATER     :
TRADING LLC, and RICHARD HERSHEY,  :
              :
    Plaintiffs,       :
   *v.*           :
              :
PACIFIC INVESTMENT MANAGEMENT  :  05-CV-4681
COMPANY LLC, PIMCO FUNDS, and   :
John Does 1-100,        :
              :  Judge Ronald A. Guzman
    Defendants.      :

-----------------------------------------------------------------------x

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION
## FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ....................................................................................... 2

I.    INTRODUCTION ................................................................................................. 4

      A.    Plaintiffs' Claims ..................................................................................... 4

      B.    Procedural History .................................................................................. 4

      C.    The Certified Class .................................................................................. 6

      D.    The $118,750,000 Settlement Fund Created For The Benefit of The Class ........... 6

II.   THE COURT SHOULD GRANT FINAL APPROVAL OF THE PROPOSED
      SETTLEMENT ..................................................................................................... 7

      A.    The Proposed Settlement Is Fair, Reasonable and Adequate ................................ 7

            1.    The Strength Of The Plaintiff's Case On The Merits Measured
                  Against The Terms Of The Settlement ....................................................... 7

                  a     The Risks ..................................................................................... 7

                  b.    The Substantial Benefits To The Class ........................................... 9

            2.    The Complexity, Length, And Expense Of Continued Litigation ............ 10

            3.    The Amount Of Opposition To The Settlement Among
                  Affected Parties ..................................................................................... 10

            4.    The Presence Of Collusion In Gaining A Settlement ............................... 11

            5.    The Stage Of The Proceedings and The Amount Of Discovery
                  Completed .............................................................................................. 11

      B.    Class Counsel Believes That The Settlement Is Fair, Reasonable,
            Adequate And In The Best Interests Of The Class ............................................... 12

III.  NOTICE OF THE SETTLEMENT SATISFIED RULE 23 AND DUE PROCESS ........ 13

      A.    The Notice Provided To The Class Was The Best Practicable ............................ 13

      B.    The Court Need Not Allow a Second Opportunity To Opt Out .......................... 15

i

IV.     THE PROPOSED PLAN OF ALLOCATION IS FAIR, REASONABLE
        AND ADEQUATE ....................................................................................................... 15

CONCLUSION ..................................................................................................................... 17

## TABLE OF AUTHORITIES

**Cases**

*Armstrong v. Bd. of School Directors*, 616 F.2d 305 (7th Cir. 1980) ............................................. 9

*E.E.O.C. v. Hiram Walker & Sons, Inc*., 768 F.2d 884 (7th Cir. 1985) ........................................ 7

*General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074 (7th Cir. 1997)............... 7

*Hispanics United of DuPage County, et al. v. Village of Addison*,
    988 F. Supp. 1130 (N.D. Ill. 1997) ............................................ 11

*In re BP Propane Direct Purchaser Antitrust Litig.*,
    06-CV-3621 Docket No. 209 (JZ) (N.D. Ill.) ........................................ 2, 8

*In re Natural Gas Commodities Litig.*,
    03-CV-6186 Docket No. 445, (S.D.N.Y. 2005) ............................................. 2, 7, 9

*In re Soybeans Futures Litigation.*, No. 89 Civ. 7009 (N.D. Ill.)......................................... 2, 8, 10

*In re Sumitomo Copper Litigation*, 74 F.Supp. 2d 393 (S.D.N.Y. 1999) ................................... 2, 8

*Isby v. Bayh,* 75 F.3d 1191 (7th Cir. 1996).................................................................................. 12

*Kohen v. Pacific Inv. Mgmt. Co. LLC,* 244 F.R.D. 469 (N.D. Ill. 2007) .................................... 4, 6

*Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677 (7th Cir. 1987).......... 3, 10

*Merrill Lynch, Pierce, Fenner & Smith v. Curran*, 456 U.S. 353 (1982)................................. 2, 10

*Metro. Hous. Dev. Corp. v. Village of Arlington Heights*, 616 F.2d 1006 (7th Cir. 1980) ............ 7

*Mullane v. Central Hanover, Tr. Co.*, 339 U.S. 306 (1950) ......................................................... 13

**Rules**

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................................................ 13

Fed. R. Civ. P. 23(e) ........................................................................................................................ 7

Fed. R. Civ. P. 23(e)(1)................................................................................................................... 13

**Other Authorities**

James D. Cox & Randall S. Thomas, *Letting Billions Slip Through Your Fingers:*
*Empirical Evidence and Legal Implications of the Failure of Financial Institutions*
*to Participate in Securities Class Action Settlements*, 58 Stan. L. Rev. 411, 415 (2005) ......... 3

John C. Coffee, Jr. (ed.), *Litigation Governance:  Taking Accountability Seriously*,
110 Colum. L. Rev. 288, 335, n. 150 (Mar. 2010) .................................................................... 3

Newberg on Class Actions, § 11.40 at 451 (2d ed. 1985) ........................................................... 11

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs respectfully submit this memorandum and the accompanying declarations of Eric J. Miller and Marvin A. Miller, Esq. in support of their motion for (a) final approval of the proposed Settlement[1] of this class action by the creation of a $118,750,000 Settlement Fund to pay Class members as well as to pay all Class Counsel attorneys' fees and all other fees, costs and expenses and (b) entry of the Final Order and Judgment attached hereto as Exhibit 1.[2]

The proposed Settlement has already been preliminarily approved by the Court and fully merits final approval by the Court.[3]

As set forth in detail in the previously submitted Declaration of Judge Daniel Weinstein (Ret.) [Docket No. 566], the Mediator in this action, the proposed Settlement is the result of the most vigorous efforts on behalf of the Class by Lead Counsel, and represents a notably substantial achievement given the strength of the defenses Plaintiffs faced and the other special circumstances that made this an unusually challenging case. Specifically, this is apparently the first Commodity Exchange Act, 7 U.S.C. §1 *et seq*. ("CEA") manipulation class action settlement in which there was no accompanying action by the government or exchange. Moreover, as is described below, not only was there no such government or exchange proceeding but the government itself made findings that, Defendants skillfully argued, showed there was no manipulation.

---

[1] The Settlement Agreement and its exhibits were previously filed with the Court on January 21, 2011. See Docket No. 557. Capitalized terms used herein are defined in the Settlement Agreement.
[2] Class Counsel is concurrently submitting a Petition For An Award of Attorneys' Fees and Reimbursement of Expenses.
[3] See the Court's January 26, 2011 Order Preliminarily Approving Proposed Settlement, Scheduling Hearing For Final Approval Thereof, And Approving The Proposed Form And Program Of Notice To The Class ("January 26, 2011 Order"). See Docket No. 562.

In these circumstances, the proposed Settlement in which Class members will likely receive 18% or more of their claims is very fair, reasonable and adequate.

## PRELIMINARY STATEMENT

The United States Supreme Court has called commodity futures trading "esoteric" and CEA manipulation claims are notoriously "complex and difficult."  *Compare Merrill Lynch, Pierce, Fenner & Smith v. Curran*, 456 U.S. 353, 356 (1982) quoting H.R. Rep. No. 93-975, p. 1 (1974), 1974 U.S. Code Cong & Admin. News at 5843 *with In re Sumitomo Copper Litigation*, 74 F.Supp. 2d 393, 395 (S.D.N.Y. 1999) (CEA manipulation cases are "complex and difficult").

Prior to this case, apparently the only class action claims for manipulation by private parties that resulted in successful settlements were those in which governmental or exchange proceedings were also brought.  See *In re Natural Gas Commodities Litig.*, 03-CV-6186 Docket No. 445, (S.D.N.Y. 2005) (settlement of CEA manipulation claims where there was a related governmental complaint); *In re Soybeans Futures Litigation.*, No. 89 Civ. 7009, (N.D. Ill.) (same); *In re BP Propane Direct Purchaser Antitrust Litig.*, 06-CV-3621 Docket No. 209 (JZ) (N.D. Ill.) (same); *In re Sumitomo Copper Litigation*, 74 F.Supp. 2d 393 (S.D.N.Y. 1999) (same).

Such accompanying government prosecutions, at a minimum, reduce the work and risks of private class actions.  But here, there was **no** Commodity Futures Trading Commission ("CFTC") or other government or exchange prosecution of the alleged manipulation at issue here.  On the contrary, the risks of the very complex CEA manipulation claims here were significantly increased by the issuance of a CFTC memorandum that enabled the Defendants to argue that the government had expressly found that the challenged price increases were caused by market forces and not Defendants.  See *e.g.*, Docket No. 306 at pp. 5-6 and Docket No. 368-1

at p. 10. These arguments were made in Defendants' *Daubert* motions and were successful to the extent that Magistrate Judge Keys ruled that Plaintiffs' expert's causation testimony be excluded. *Compare* Docket No. 368-1 at p. 10 *with* Docket No. 508.

The extremely complex and risky claims here have now been settled for $118,750,000. The $118,750,000 Settlement Fund represents approximately 18% of Plaintiffs' expert's lower-bound estimate of class-wide damages of $632,000,000. This is an excellent result for the Class. *Compare Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 679, 682 (7th Cir. 1987) (Posner, J.) (approving settlement representing between 0.77% and 1.5% of claimed damages).

Moreover, claiming Class members will likely receive substantially in excess of 18% of their claim here. This is because (1) the Settlement Agreement provides that there will be no reversion to Defendants in respect of Class members who fail to claim until claiming Class members receive 100% of their Allowed Claim[4] (including Adjusted Allowed Claims) and (2) it is clear that not all class members submit proofs of claims.[5]

---

[4] The Allowed Claim of each Class Member shall be their alleged "Artificiality Paid" on their purchases of June Contracts during the Class Period minus their alleged "Artificiality Received" on their sales (if any) of June Contracts during the Class Period, plus 3.0% simple interest per annum for the period from June 21, 2005, until the date of distribution to Class members.

The amounts of alleged price artificiality will be the numbers contained in Plaintiffs' expert's report in this Action. As described further below, although the Magistrate Judge granted Defendants' *Daubert* request to exclude Plaintiffs' expert's proposed causation testimony and certain other testimony (in a ruling subject to pending appeal from the Magistrate Judge's ruling, which appeal will be mooted by this Settlement), that ruling did not exclude, but instead allowed the parties to continue to contest, Plaintiffs' proposed expert testimony concerning alleged price artificiality. These numbers shall be posted and remain available at www.pimcocommoditieslitigation.com.

[5] See *e.g.*, John C. Coffee, Jr. (ed.), *Litigation Governance: Taking Accountability Seriously*, 110 Colum. L. Rev. 288, 335, n. 150 (Mar. 2010); James D. Cox & Randall S. Thomas, *Letting Billions Slip Through Your Fingers: Empirical Evidence and Legal Implications of the Failure of Financial Institutions to Participate in Securities Class Action Settlements*, 58 Stan. L. Rev. 411, 415 (2005).

As is demonstrated more fully below, the Court should find that the Settlement is fair, reasonable and adequate and enter the Final Order and Judgment attached as Exhibit 1 hereto.

## I.    INTRODUCTION

### A.    Plaintiffs' Claims

Plaintiffs claimed that Pacific Investment Management Company LLC and PIMCO Funds ("Defendants"), between May 9, 2005 and June 30, 2005 ("Class Period"), caused artificially high prices of the June 2005 Ten Year Treasury Note Futures Contract ("June 2005 Contract") in violation of the CEA. Plaintiffs alleged that Defendants acquired large long positions[6] in (a) the June 2005 Contract, and (b) the U.S. Ten Year Treasury note maturing in February 2012, which was the cheapest to deliver ("CTD") note on the June 2005 Contract.

Plaintiffs contended that Defendants' foregoing conduct caused Plaintiffs and members of the Class to pay artificially high prices in order to liquidate their short positions in the June 2005 Contract. Defendants have consistently and vigorously denied Plaintiffs' claims.

### B.    Procedural History

On August 26, 2005, Plaintiffs filed an initial class action complaint against Defendants in the United States District Court for the Northern District of Illinois.

The Court appointed Lovell Stewart Halebian Jacobson LLP as sole interim class counsel and later approved the Firm as class counsel. See *Kohen v. Pacific Inv. Mgmt. Co. LLC,* 244 F.R.D. 469, 475 (N.D. Ill. 2007), *aff'd,* 571 F.3d 672, *cert. denied,* 130 S. Ct. 1504 (2010).

Defendants moved to dismiss Plaintiffs' complaint on February 2, 2006. On July 31, 2007, the Court substantially denied Defendants' motion to dismiss.

---

[6] The buyer of a futures contract is said to be "long" and the seller is said to be "short." Although more than 99.9% of all futures contracts are offset by trading in the futures market, if a delivery occurs, the short makes delivery and the long pays for the delivered item.

Plaintiffs filed a motion to certify the Class on February 16, 2006. On July 31, 2007 the Court granted Plaintiffs' motion to certify the Class. On July 7, 2009, the Seventh Circuit Court of Appeals affirmed the Court's order certifying the Class. Defendants' petition for rehearing and rehearing *en banc* were denied on July 31, 2009. The Supreme Court denied Defendants' petition for *certiorari* on February 22, 2010.

Document and deposition discovery began in January 2006 and ended in January 2007. Expert discovery ended on September 10, 2007. During discovery, Defendants produced the equivalent of approximately eleven million pages of documents and the parties took approximately twenty-four fact and twelve expert depositions.

Pursuant to an order of the Court in August 2009, notice of the pendency of this certified class action was sent to members of the Class. Such notice afforded Class members an opportunity to request exclusion from the Class. Requests for exclusions from the Class were required to have been received by December 1, 2009.

On October 17, 2007, Defendants moved for summary judgment. Plaintiffs opposed summary judgment. Defendants' summary judgment motion was pending at the time the Settlement was executed.

On February 6, 2008, Defendants made a motion requesting that certain testimony of Plaintiffs' experts be excluded as insufficient even to be presented for consideration by the fact-finder. On March 10, 2010, Magistrate Judge Arlander Keys denied that motion with respect to certain Plaintiffs' experts' testimony (*e.g.*, testimony relating to the amounts of alleged price artificiality) but granted that motion with respect to other testimony (*e.g.*, testimony relating to *causation*, and testimony about intent and legal conclusions). Defendants did not object to Magistrate Judge Keys' opinion and order. Plaintiffs did object. Plaintiffs' objections to

5

Magistrate Judge Keys' opinion and order were pending at the time the Settlement Agreement was executed.

After twenty months of protracted settlement negotiations through the Mediator, intensive negotiation occurred during December 2010. On December 23, 2010, the Mediator recommended a settlement of $118,750,000, from which all attorneys' fees and expenses and class notice and administrative expenses would be deducted, in consideration for a complete release of the claims asserted herein.

The parties accepted this recommendation on December 24, 2010 and proceeded to negotiate the settlement documents. The parties then successfully completed the documentation and executed the Settlement Agreement by January 21, 2011.

On January 21, 2011, Plaintiffs filed a motion seeking preliminary approval of the Settlement. On January 26, 2011, the Court preliminary approved the proposed Settlement and directed that notice be provided to the Class.

### C.     The Certified Class

As fully upheld on appeal, the Class certified by this Court is defined as follows: "[a]ll Persons who purchased, between May 9, 2005 and June 30, 2005, inclusive, a June 2005 10-year Treasury note futures contract in order to liquidate a short position. Excluded from the Class are the defendants Pacific Investment Management Company, LLC, PIMCO Funds, and any affiliated or associated parties." *Kohen v. Pacific Inv. Mgmt. Co. LLC,* 244 F.R.D. 469, 475 (N.D. Ill. 2007), *aff'd,* 571 F.3d 672, *cert. denied,* 130 S.Ct. 1504 (2010).

### D.     The $118,750,000 Settlement Fund Created For The Benefit of The Class

Pursuant to the terms of the Settlement, Defendants have wire transferred the Initial Payment of $59,375,000 into the Escrow Account. Defendants must wire an Additional Payment

in the amount of $59,375,000 into the Escrow Account by no later than March 31, 2011. These two payments together, plus accrued interest thereon, constitute the Settlement Fund.

## II. THE COURT SHOULD GRANT FINAL APPROVAL OF THE PROPOSED SETTLEMENT

Settlement of a class action requires court approval. Fed. R. Civ. P. 23(e) (settlements in class actions require "…the court's approval"). It is well established that there is an overriding public interest in settling and quieting litigation, particularly class actions. *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888-89 (7th Cir. 1985), *cert. denied*, 478 U.S. 1004 (1986); *Metro. Hous. Dev. Corp. v. Village of Arlington Heights*, 616 F.2d 1006, 1013 (7th Cir. 1980).

### A. The Proposed Settlement Is Fair, Reasonable and Adequate

The Seventh Circuit has identified six factors for analyzing whether a class action settlement should be given final approval:

> 1) the strength of the plaintiff's case on the merits measured against the terms of the settlement; 2) the complexity, length, and expense of continued litigation; 3) the amount of opposition to the settlement among affected parties; 4) the presence of collusion in gaining a settlement; 5) the stage of the proceedings; and 6) the amount of discovery completed.

*General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997) ("*General Electric*").

As set forth below, the foregoing six factors applied to the proposed Settlement demonstrate that the proposed Settlement is fair, reasonable and adequate such that final approval is strongly merited.

1. **The Strength Of The Plaintiff's Case On The Merits Measured Against The Terms Of The Settlement**

   a. **The Risks**

This is the rare CEA manipulation class action where there was no governmental or exchange complaint. *Compare In re Natural Gas Commodities Litig.*, 03-CV-6186 Docket No. 445 (S.D.N.Y. 2005) (settlement of CEA manipulation claims where there was a related governmental complaint); *In re Soybeans Futures Litigation.*, No. 89 Civ. 7009 (N.D. Ill.) (same); *In re BP Propane Direct Purchaser Antitrust Litig.*, 06-CV-3621 Docket No. 209 (JZ) (N.D. Ill.) (same); *In re Sumitomo Copper Litigation*, 74 F.Supp. 2d 393 (S.D.N.Y. 1999) (same).

Not only was a governmental complaint absent here, but Defendants were able to argue that the CFTC found that market forces, and not Defendants, caused the high June 2005 Contract prices during the Class Period. *Compare* PIMCO's Reply Memorandum In Support of Its Motion To Exclude Certain Testimony of Craig Pirrong [Docket No. 508] at p. 18 (arguing that the CFTC confirmed "…that a number of systemic market factors-not the actions of any particular market participant – caused the distorted pricing of the June futures contract") *with* Docket No. 518 at pp. 24-25 (Judge Magistrate Keys ruled that Professor Pirrong's causation opinions be excluded).

Additionally, at the time the Settlement was reached, Plaintiffs were faced with several significant risks. Such risks included the following: (a) the Magistrate Judge's opinion could be upheld, depriving Plaintiffs of various expert testimony, including causation expert testimony; (b) Defendants' pending summary judgment motion could be granted which would have resulted in no recovery whatsoever for Class members; (c) Plaintiffs could lose at trial, or, if successful at trial, could lose on a motion for judgment notwithstanding the verdict, or on appeals which

would have resulted in no recovery whatsoever for the Class; and (d) even if the Plaintiffs survived all of the foregoing risks, the amount of damages awarded and sustained post-trial and on appeals could be less than that provided by this Settlement.  Lovell Declaration [Docket No. 555] at ¶11.

The Honorable Daniel Weinstein (Ret.), the Mediator in this matter, opined that Defendants had defenses which created significant risks for Plaintiffs on liability and damages. Mediator Decl. [Docket No. 556] at ¶¶9-12.  Defendants contended, among many other things, that:

> (a) June 2005 Contract prices were not artificial but instead were caused by unprecedented and aberrational market conditions, as subsequent regulator statements confirmed;
>
> (b) Defendants consulted throughout with regulators to whom they disclosed their trades, positions, and trading rationales;
>
> (c) Instead of holding a "long-long" position and controlling the cheapest-to-deliver ("CTD") note, Defendants (in consultation with regulators) lent and thus gave control of their CTD notes back to the market, while by contrast other large note holders exacerbated scarcity by withdrawing their notes from the lending market;
>
> (d) Defendants reduced their futures position as they acquired CTD notes, and largely liquidated their futures position by buying instruments other than the CTD;
>
> (e) Defendants legitimately sought best execution for their clients based on good faith and accurate predictions of market direction;
>
> (f) Defendants declined to transfer (or "roll") their positions solely to protect their clients including in light of aberrational price relationships between contracts; and
>
> (g) In the end, only cheapest-to-deliver notes were delivered.

Plaintiffs would have tried to overcome the foregoing risks, but if such risks materialized, their impact would have been substantial and perhaps dispositive of Plaintiffs' claims.  The proposed Settlement eliminates all the foregoing risks.

### b. The Substantial Benefits To The Class

The benefit to the class is the fundamental and most important test of the reasonableness of the Settlement. *Armstrong v. Bd. of School Directors*, 616 F.2d 305, 313 (7th Cir. 1980).

The $118,750,000 Settlement Fund is well within the range of prior CEA class action settlements. *Compare In re Natural Gas Commodities Litig.*, 03-CV-6186 Docket No. 445 and Order dated June 15, 2007 (S.D.N.Y. 2005); *In re Soybeans Futures Litigation.*, No. 89 Civ. 7009, Docket Nos. 470-471 (N.D. Ill.). Moreover, all the prior CEA settlements were in cases where the government (unlike here) had pursued the defendant and the plaintiffs had other advantages, in direct contrast to the formidable and unusual challenges faced by Plaintiffs in this case. *Id.*

Finally, the likely provision of in excess of 18% plus simple interest at 3% per annum of each claiming Class member's damages claim indicates that the most important *General Electric* factor strongly supports a finding that the Settlement is fair, reasonable and adequate. *Compare Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 679, 682 (7th Cir. 1987) (Posner, J.) (approving settlement representing between 0.77% and 1.5% of claimed damages).

### 2. The Complexity, Length, And Expense Of Continued Litigation

The remaining litigation of the admissibility of expert reports, summary judgment, and (if Plaintiffs overcame those risks) the trial and potential appeals would each involve complex issues. *Compare Merrill Lynch*, 456 U.S. at 356 (commodity futures trading is "esoteric") *with In re Sumitomo Copper Litigation*, 74 F.Supp. at 395 (S.D.N.Y. 1999) (CEA manipulation cases are "complex and difficult").

The Settlement of this complex litigation will conserve the Court's resources and allow the Class to avoid significant additional expenses. The costs of experts, the costs of preparing the voluminous pre-trial order, as well as trial and appeals would have been substantial. See Lovell Decl. [Docket No. 555] at ¶¶18-19. Further, appeals of any summary judgment decision or final judgment (which, given the size and nature of Plaintiffs' claims were almost guaranteed) all but ensured that this litigation would have dragged on without resolution or relief for many years in the absence of the Settlement. *Id*.

### 3. The Amount Of Opposition To The Settlement Among Affected Parties

There has been no opposition to the Settlement. As set forth below in "III," notice of the Settlement has been provided to Class members consistent with the Court's January 26, 2011 Order. The deadline for objections to the Settlement is March 15, 2011. As of March 3, 2011, no objections to the Settlement had been filed. See Declaration of Eric J. Miller ¶12. In the event that objections are filed, Class Counsel will respond to such objections in a reply brief.

### 4. The Presence Of Collusion In Gaining A Settlement

There is a presumption that a proposed settlement is fair and reasonable when it was the result of arm's-length negotiations. *See* 2 Newberg on Class Actions, § 11.40 at 451 (2d ed. 1985); *Hispanics United of DuPage County, et al. v. Village of Addison*, 988 F. Supp. 1130, 1150 n.6 (N.D. Ill. 1997) ("A strong presumption of fairness attaches to the proposed settlement when it is shown to be the result of this type of a negotiating process.") (citation omitted).

There was no collusion here. Lovell Declaration [Docket No. 555] at ¶4. The Settlement was a product of more than twenty months of on-again off-again negotiations that were strictly at arm's length, in good faith, and absolutely free of any collusion with Defendants. *Id*. In fact, the negotiations took place largely through an intermediary, The Honorable Daniel Weinstein (Ret.),

who has served as Mediator since approximately March 2008. *Id.* The amount of the Settlement Fund was recommended by Judge Weinstein (Ret.) and was ultimately accepted by the parties. *Id.* ¶¶5, 7.

Thus, the integrity of the process that resulted in the Settlement entitles it to a presumption that it is fair and reasonable.

### 5. The Stage Of The Proceedings and The Amount Of Discovery Completed

After more than five-plus years of litigation, the stage of the proceedings was extremely advanced and all fact and expert discovery had been completed well before the Settlement was reached. See I.B. *infra* (detailing the lengthy procedural history of the action leading up to the Settlement).

With respect to the stage of the proceedings, at the time of the Settlement, Defendants' motions for summary judgment had been fully briefed and were pending before the Court. Also, Plaintiffs' objections to Magistrate Judge Keys' ruling excluding portions of Plaintiffs' expert reports at trial had been fully briefed and were also pending before the Court.

A significant amount of discovery had been completed prior to the Settlement. Such discovery included, for example, the following: (a) Class Counsel's review of the equivalent of approximately eleven million pages of documents: (b) thirty-six fact and expert depositions; and (c) the exchange of eighteen separate expert reports. See Lovell Declaration [Docket No. 555] at ¶¶20-24. Additionally, the parties prepared and exchanged multiple mediation briefs on multiple issues and engaged in several formal mediation sessions and dozens of settlement negotiations with the Mediator. *Id.* Class Counsel also had numerous discussions with their experts during the final negations leading up to the Settlement. *Id.*

12

In sum, Class Counsel was extremely well informed of the facts and risks of the litigation when the Settlement was made.

### B. Class Counsel Believes That The Settlement Is Fair, Reasonable, Adequate And In The Best Interests Of The Class

The opinion of experienced counsel is an important consideration when determining whether a proposed settlement is fair. See *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996) ("…the district court was entitled to give consideration to the opinion of competent counsel that the settlement was fair, reasonable and adequate.")

Lead Counsel has extensive experience in class actions alleging violations of the CEA. See McGrath Declaration Exhibit 1 *passim*. Such experience includes acting as sole lead counsel in obtaining the largest class action settlement in the history of the CEA and acting as co-lead counsel in what is now, after this Settlement, the third largest class action settlement in the history of the CEA. *Id*. Based on Lead Counsel's prior experience with CEA manipulation cases and their extensive investigations into the merits of Plaintiffs' claims and the risks herein, Lead Counsel respectfully submits that the proposed Settlement is fair, reasonable and in the best interests of the Class.

## III. NOTICE OF THE SETTLEMENT SATISFIED RULE 23 AND DUE PROCESS

### A. The Notice Provided To The Class Was The Best Practicable

Before a proposed class action settlement can be finally approved, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). When, as here, a class is certified for settlement purposes under Rule 23(b)(3), "…the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

13

As the Supreme Court has noted:

> [a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance.  But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional requirements are satisfied.

*Mullane v. Central Hanover, Tr. Co.*, 339 U.S. 306, 314-15 (1950) (internal citations omitted).

On January 21, 2011, Plaintiffs proposed a six-pronged notice program that was reasonably calculated to reach all Class members and to reach more than once both the largest traders and those who engaged in the largest trading volume in the June 2005 Contract.  See Docket No. 554 at pp. 13-17.  The six prongs were:  (1) direct mail notice to the largest traders in the Class (who are estimated to have held more than 65% of the positions of the entire Class); (2) direct mail notice to all Chicago Board of Trade ("CBOT") clearing members (requesting that such clearing members mail the notice to their customers who transacted in June 2005 Contracts); (3) direct mail notice to other Class members whose names and addresses Plaintiffs have learned through other means; (4) posting notice at the Chicago Mercantile Exchange (successor to the CBOT); (5) notice by publication in two separate industry publications and their respective websites; and (6) the establishment of a settlement website.  *Id.*

This same notice program was previously approved by this Court when it certified the Class and directed notice of such action to members of the Class in August 2009.  *Id.* p. 15.

Plaintiffs' January 21, 2011 submission established that the foregoing notice program satisfied both the requirements of Rule 23 and due process and that it was the best notice practicable under the circumstances.  *Id.* at pp. 13-17.  Plaintiffs' January 21, 2011 submission

also established that the times to object, file a proof of claim and associated deadlines were all reasonable and were in fact longer than what has previously been found to be adequate under Rule 23(e). *Id*. pp. 17-18. On January 26, 2011, the Court directed Plaintiffs to implement their six-pronged notice program. See Docket No. 562 at ¶¶2-4.

Pursuant to ¶8 of the Court's January 26, 2011 Order, Plaintiffs have submitted herewith the Declarations of Eric J. Miller and Marvin A. Miller, Esq., which attest to the compliance with the class notice provisions set forth in ¶¶2-4 of the Court's January 26, 2011 Order.

Accordingly, the notice that has been provided to the Class satisfies the requirements of Rule 23 and due process and constitutes the best notice practicable under the circumstances.

### B. The Court Need Not Allow a Second Opportunity To Opt Out

As Plaintiffs explained in their prior submission, the right to request exclusion from the Class was afforded to Class members in 2009 such that a second right to opt out is not required. See Docket No. 554 at pp. 18-22. This is consistent with Rule 23(e) and prior case law. *Id*.

The Court's January 26, 2011 Order does not provide for a second opportunity to opt out. See Docket No. 562 ¶5.

## IV. THE PROPOSED PLAN OF ALLOCATION IS FAIR, REASONABLE AND ADEQUATE

The proposed Plan of Allocation mirrors the Allowed Claim except that it fairly and reasonably reflects the fact that Plaintiffs refused to settle at lower numbers because of Plaintiffs' beliefs in the relative strength of the claims for damages on behalf of those Class members who liquidated on May 24 and May 25, 2005.

Thus, the Adjusted Allowed Claim will be the same as the Allowed Claim (the definition of Allowed Claim is set forth in fn. 4 *supra*) except as follows. Plaintiffs contended that Defendants engaged in the largest of their challenged purchases of CTD notes on May 24, 2005

and that Defendants also held their largest overall positions on May 24th. Plaintiffs contended that this conduct caused significant increases in June 2005 Contract prices on May 24 and May 25, 2005.

The Class members who liquidated short positions in June Contracts on May 24 and 25 and allegedly suffered net artificial impact from **all** their liquidations on May 24 and May 25 as well as their overall transactions may be entitled to a Net Enhancement as follows:

(a) For the distribution among Class members *inter se*, (i) if the sum of each and every claiming Class member's Adjusted Allowed Claim is less than or equal to the Net Settlement Fund, each Class member who executes the required release and covenant not to sue and submits adequate documentation, all as determined by the Settlement Administrator, shall be entitled to receive an amount computed by multiplying the sum of each and every claiming Class member's Adjusted Allowed Claim by a fraction (1) the numerator of which is the Class member's Adjusted Allowed Claim and (2) the denominator of which is the sum of each and every claiming Class member's Adjusted Allowed Claim; and (ii) if the sum of each and every claiming Class member's Adjusted Allowed Claim is greater than the Net Settlement Fund, each Class member who executes the required release and covenant not to sue and submits adequate documentation, all as determined by the Settlement Administrator, shall be entitled to receive an amount computed by multiplying the Net Settlement Fund by a fraction (1) the numerator of which is the Class member's Adjusted Allowed Claim and (2) the denominator of which is the sum of each and every claiming Class member's Adjusted Allowed Claim. For the avoidance of doubt, no claimant shall receive more than its Adjusted Allowed Claim.

(b) Each Class member's Adjusted Allowed Claim shall be the same as its Allowed Claim except that, if a Class member has more alleged Price Artificiality paid for liquidations of June Contracts in its transactions on May 24 and May 25, 2005 than Artificiality Received on the opening sales of such liquidated June Contracts (this difference is referred to as the "Enhancement Amount"), then, solely for purposes of computing such Class member's Allowed Claim, that Class member may be entitled to a Net Enhancement of its Allowed Claim as described below.

(c) The Net Enhancement Amount shall be the Enhancement Amount minus the Reduction (discussed in Section (d) below), multiplied by 0.15, all subject to the further potential reduction as set forth in subparagraph (e) below.

(d) If a Class member made on May 24 and May 25 sales of June Contracts, other than a new short position that was liquidated on May 24 or May 25, then the amount of Artificiality Received on such sales shall be the first component in the Reduction as set forth below. The amount of the Reduction shall be equal to (A) the amount of Artificiality Received on newly sold June Contracts on May 24 and May 25 that remained open after May 25 minus the Artificiality Paid when such sales of open June Contracts open after May 25 were liquidated plus

16

(B) the amount of Artificiality Received from the June Contracts sold on May 24 and May 25 to liquidate long positions minus the Artificiality Paid (if any) to open such long positions in June Contracts. However, in no event shall the amount of the Reduction be less than zero or greater than the Enhancement Amount.

(e)     The Net Enhancement Amount shall be subject to a further reduction in the event that the enhancement provision operates to reduce by more than 10% the amount that any Class member would have received but for the enhancement provision. In that event, the Class members entitled to receive a Net Enhancement Amount shall have their Net Enhancement Amount reduced on a proportionate basis in an amount sufficient to effectuate the foregoing sentence.

Settlement Agreement [Docket No. 557] at Section 11.

Because of the greater comparative strength of the claims in respect of liquidations on May 24 and May 25, under the Plaintiff Class' theory of liability, this modest enhancement of net alleged artificiality paid on May 24 and 25 is very reasonable and fair. Mediator Decl. [Docket No. 556] at ¶19 (attesting to the fairness of the Net Enhancement Amount).

This small adjustment will cause no more than a 10% diminution in any Class member's claim. Settlement Agreement [Docket No. 557] at Section 11. It is anticipated that the actual amount of diminution will be significantly less than 10%. But this cannot be determined until all the proofs of claims have been analyzed and the exact constituency of the Class members who submit proofs of claims has been finally determined. Comparable or even more significant differentiations between claims have been accepted as appropriate in prior CEA class action settlements. See *e.g.*, *In re Natural Gas Commodities Litig.*, 03-CV-06186 Docket No. 618 (S.D.N.Y.).

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court find the proposed Settlement to be fair, reasonable and adequate, and enter the Final Order and Judgment attached as Exhibit 1 hereto.

Dated: March 3, 2011

Respectfully submitted,

*Plaintiffs*

By: */s/ Marvin A. Miller*
      Marvin A. Miller
**MILLER LAW LLC**
115 S. LaSalle Street, Suite 2910
Chicago, Illinois 60603
Tel:    (312) 332-3400

*/s/ Christopher Lovell*
Christopher Lovell
Gary S. Jacobson
Christopher McGrath
**LOVELL STEWART HALEBIAN JACOBSON LLP**
61 Broadway, Suite 501
New York, New York 10006
Tel:    (212) 608-1900

# Exhibit 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

------------------------------------------------------------x
                                     :

JOSEF A. KOHEN, BREAKWATER       :
TRADING LLC, and RICHARD HERSHEY,   :
                                     :

         Plaintiffs,                :

                                     :

    v.                                 :
                                     :    Master File No.
PACIFIC INVESTMENT MANAGEMENT    :    05 CV 4681
COMPANY LLC, PIMCO FUNDS, and      :
John Does 1-100,                     :
                                     :    Judge Ronald A. Guzman
         Defendants.            :
                                     :

                                     :
------------------------------------------------------------x

## [PROPOSED] FINAL ORDER AND JUDGMENT

       This matter came for a duly-noticed hearing on April 7, 2011 (the "Final Approval Hearing"), upon the Plaintiffs' Motion for Final Approval of Settlement with Defendant Pacific Investment Management Company LLC and PIMCO Funds (collectively "Defendants") (the "Motion"). Due and adequate notice of the Settlement Agreement having been given to the members of the Class, the Final Approval Hearing having been held and the Court having considered all papers filed and proceedings had herein and otherwise being fully informed in the premises and good cause appearing therefor, and a determination having been made expressly pursuant to Rule 54(b) of the Federal Rules of Civil Procedure that there is no justification for delay,

1

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED**:

1.      This Final Order and Judgment hereby incorporates by reference the definitions in the Settlement Agreement dated January 21, 2011 (the "Settlement Agreement") and all terms used herein shall have the same meanings as set forth in the Settlement Agreement.

2.      This Court has jurisdiction over the subject matter of the Action and over all parties to the Action.

3.      The Court finds that due process and adequate notice have been provided pursuant to Rule 23 of the Federal Rules of Civil Procedure to all members of the Class, notifying the Class of, among other things, the pendency of this Action and the proposed Settlement with Defendants.

4.      The notice provided was the best notice practicable under the circumstances and included individual notice to those members of the Class who the Parties were able to identify through reasonable efforts.  The Court finds that Notice was also given by publication in multiple publications as set forth in the Declaration of Eric J. Miller dated March 3, 2011 and previously submitted.  Such notice fully complied in all respects with the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process of law.

5.      Pursuant to and in compliance with Rule 23 of the Federal Rules of Civil Procedure, the Court hereby finds that due and adequate notice of these proceedings was directed to all Class members of their right to object to the Settlement, the plan of allocation and Class Counsel's right to apply for attorneys' fees and reimbursement of expenses associated with the Action.  A full and fair opportunity was accorded to all members of the Class to be heard with respect to the foregoing matters.

6.      The Court finds that the members of the Class identified on the schedule attached

hereto as Exhibit A, and no others, have previously requested to be excluded from the Class

pursuant solely to the notice of pendency dated August 20, 2009.  Accordingly the persons listed

on Exhibit A are not included in the Class nor bound by this Final Order and Judgment.

7.      It is hereby determined that all members of the Class whose names are not on Ex.

A hereto are bound by this Final Order and Judgment.

8.      Pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Court hereby

approves the settlement, as set forth in the Settlement Agreement, and finds that the settlement is,

in all respects, fair, reasonable and adequate, and in the best interests of the Class, including

Plaintiffs. This Court further finds that the settlement set forth in the Settlement Agreement is the

result of arm's-length negotiations between experienced counsel representing the interests of

Plaintiffs, the Class, and Defendants.  Accordingly, the settlement embodied in the Settlement

Agreement is hereby approved in all respects.  The Parties are hereby directed to carry out the

Settlement Agreement in accordance with all of its terms and provisions, including the

Termination provisions.

9.      Notwithstanding the provisions of any other paragraph of this Final Order and

Judgment, if the Settlement Agreement is validly terminated, then, by automatic operation of this

paragraph, this Final Order and Judgment shall be null and void except for the provisions in this

paragraph; Plaintiffs' claims shall be reinstated; Defendants' defenses shall be reinstated; and the

parties shall be returned to their respective positions before the Settlement Agreement was

signed.  Any termination of the Settlement Agreement shall be dependent upon the realization of

the condition subsequent that Plaintiffs' claims shall not be dismissed or if they have been

dismissed that Plaintiffs' claims are reinstated.  If, for any reason, Plaintiffs' claims are

3

dismissed and not reinstated, then Defendants' termination of the Settlement Agreement shall be null and void.

10.     The Settlement Fund has been established as a trust and as a Settlement Fiduciary Account. The Court further approves the establishment of the Settlement Fiduciary Account under the Settlement Agreement as a qualified settlement fund pursuant to Internal Revenue Code Section 468B and the Treasury Regulations promulgated thereunder.

11.     The Court reserves exclusive jurisdiction, except where jurisdiction is given to the Mediator under the terms of the Settlement Agreement, without affecting in any way the finality of this Final Order and Judgment, over the implementation and enforcement of the Settlement Agreement and the settlement contemplated thereby and the enforcement of this Final Order and Judgment. The Court also retains exclusive jurisdiction, except where jurisdiction is given to the Mediator under the terms of the Settlement Agreement, in order to resolve any disputes that may arise with respect to the Settlement Agreement, the settlement, or the Settlement Fund, consider or approve administration costs and fees, and consider or approve the amounts of distributions to members of the Settlement Class. In addition, without affecting the finality of this judgment, Defendants and each Class member hereby irrevocably submit to the exclusive jurisdiction of the United States District Court for the Northern District of Illinois, Eastern Division, except where jurisdiction is given to the Mediator under the terms of the Settlement Agreement, for any suit, action, proceeding or dispute arising out of or relating to this Final Order and Judgment or the Settlement Agreement, including, without limitation any suit, action, proceeding or dispute relating to the Release provisions therein.

12.     Plaintiffs and all members of the Class, the successors and assigns of any of them, and anyone claiming through or on behalf of any of them, whether or not they execute and

deliver a proof of claim, are hereby permanently enjoined from commencing, instituting, causing

to be instituted, assisting in instituting or permitting to be instituted on his, her or its behalf,

whether directly, derivatively, representatively or in any other capacity, any proceeding in any

state or federal court, in or before any administrative agency, or any other proceeding or

otherwise alleging or asserting against the Released Persons, individually or collectively, any of

the Released Claims in this Final Order and Judgment and in the Settlement Agreement.

13.     Under the terms and conditions set forth in the Settlement Agreement, PIMCO,

PIMCO Funds, the predecessors or successors of each, the present or former trustees of PIMCO

Funds, and their past, present and future parents, subsidiaries, divisions, affiliates, stockholders,

and each and any of their respective stockholders, members, officers, directors, insurers, general

or limited partners, employees, agents, legal representatives (and the predecessors, heirs,

attorneys and executors, administrators, successors and assigns of each of the foregoing)

(individually and collectively, the "Released Parties") are and shall be released and forever

discharged to the fullest extent permitted by law from and against any and all manner of claims,

demands, actions, suits, causes of action, damages whenever incurred, liabilities of any nature

and kind whatsoever, including without limitation costs, expenses, penalties and attorneys' fees,

known or unknown, suspected or unsuspected, in law or equity, that each and every Class

Member (including any of their past, present or future parents, subsidiaries, divisions, affiliates,

stockholders, and each and any of their respective stockholders, officers, directors, insurers,

general or limited partners,  agents, attorneys, employees, legal representatives, trustees,

associates, heirs, executors, administrators, purchasers, predecessors, successors and assigns,

acting in their capacity as such), whether or not they object to the Settlement and whether or not

they make a claim upon or participate in the Settlement Fund (the "Releasing Parties"), ever had,

5

now has, or hereafter can, shall or may have, directly, representatively, derivatively or in any other capacity, arising in any way out of any losses or transactions in the June Contract or the underlying "cheapest-to-deliver" note for the June Contract (*i.e.*, the 10-year Treasury note due February 15, 2012) that is, the nucleus of operative facts alleged or at issue or underlying the action, whether or not asserted in the Action (the "Released Claims").  Each Class Member hereby covenants and agrees that he/she/it shall not sue or otherwise seek to establish or impose liability against any Released Party based, in whole or in part, on any of the Released Claims.

14.    In addition, each Releasing Party hereby expressly waives and releases any and all provisions, rights, and benefits conferred by § 1542 of the California Civil Code, which reads:

**Section 1542.  <u>General Release; extent</u>.  A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor;**

or by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable or equivalent to § 1542 of the California Civil Code. Each Releasing Party may hereafter discover facts other than or different from those which he, she or it knows or believes to be true with respect to the claims which are the subject matter of this Section but each Releasing Party expressly waives and fully, finally and forever settles and releases any known or unknown, suspected or unsuspected, contingent or non-contingent claim that would otherwise fall within the definition of Released Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts. The releases herein given by the Released Parties shall be and remain in effect as full and complete releases of the claims set forth in the Action, notwithstanding the later discovery or existence of any such additional or different facts relative hereto or the later discovery of any such additional or different claims that would fall within the scope of the release provided in

Section 13 of this Final Order and Judgment, as if such facts or claims had been known at the time of this release.

15. The Settlement is not and shall not be deemed or construed to be an admission, adjudication or evidence of any violation of any statute or law or of any liability or wrongdoing by Defendants or any Released Party or of the truth of any of the claims or allegations alleged in the Action. The Settlement Agreement, including its exhibits, and any and all negotiations, documents and discussions associated with it, shall be without prejudice to the rights of any party, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by Defendants, or of the truth of any of the claims or allegations, or of any damage or injury. Evidence of this Settlement or the negotiation of this Settlement shall not be discoverable or used directly or indirectly, in any way, whether in the Action or in any other action or proceeding of any nature, except in connection with a dispute under this Settlement or an action in which this Settlement is asserted as a defense.

16. As of the date this Final Order and Judgment is signed, all dates and deadlines associated with the Action shall be stayed, other than those related to the administration of the settlement of the Action.

17. The Court finds that during the course of the Action, the Releasing Parties and the Released Parties and their respective counsel at all times complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure.

18. Any data or other information provided by Class members in connection with the submission of claims will be held in strict confidence, available only to the Administrator, Class Counsel, and experts or consultants acting on behalf of the Class, and Defendants and experts or consultants acting on behalf of Defendants. In no event will a Class member's data or

information be made publicly available, except as provided for herein or upon Court Order for good cause shown.

19.     The proposed plan of allocation is approved as fair, reasonable and adequate.

20.     The Court has reviewed Class Counsel's petition for an award of attorneys' fees and reimbursement of expenses.  The Court determines that an attorneys' fee of ____% of the Settlement Fund is fair, reasonable, and adequate and that Class Counsel should be paid $_____ as reimbursement for their expenses.

21.     There is no just reason for delay in the entry of this Final Order and Judgment and immediate entry by the Clerk of the Court is expressly directed pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

DATED: _____                          _____
                                           Ronald A. Guzman
                                           United States District Court Judge

# **EXHIBIT A**

The following entities, and no others, have previously requested to be excluded from the Class pursuant solely to the notice of pendency dated August 20, 2009:

1.  Banc of America Securities LLC
2.  Banc of America Futures, Inc.
3.  European Central Bank
4.  Aozora Bank, Ltd.
5.  AXA China Region Insurance Company (Bermuda) Limited
6.  The Swedish National Debt Office
7.  LBBW Asset Management (Ireland) PLC
8.  Fullerton Fund Management Company Ltd.
9.  HSBC Private Bank (Suisse) SA, Hong Kong
10. AmInternational (L) Ltd.

## <u>CERTIFICATE OF SERVICE BY ELECTRONIC MEANS</u>

I, Marvin A. Miller, one of the attorneys for plaintiffs, hereby certify that on March 3, 2011, service of ***Plaintiffs' Memorandum In Support of Motion For Final Approval of Class Action Settlement,*** was accomplished pursuant to ECF as to Filing Users and I shall comply with LR 5.5 as to any party who is not a Filing User or represented by a Filing User.

*/s/ Marvin A. Miller*