UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEF A. KOHEN, BREAKWATER TRADING LLC, and RICHARD HERSHEY, | : | |
| Plaintiffs, | : | |
| *v*. | : | |
| PACIFIC INVESTMENT MANAGEMENT COMPANY LLC and PIMCO FUNDS, | : | 05-CV-4681 |
| | : | Judge Ronald A. Guzman |
| Defendants. | : | |

**PLAINTIFFS' MOTION FOR DISTRIBUTION OF THE NET SETTLEMENT FUND**

## TABLE OF CONTENTS


I. BACKGROUND ..... 2

A. Preliminary Approval of Settlement ..... 2

B. The Extensive Notice Provided To Class Members ..... 3

C. Final Approval of Settlement ..... 3

II. THE COURT SHOULD APPROVE THE ADMINISTRATIVE DETERMINATIONS OF THE COURT-APPOINTED SETTLEMENT ADMINISTRATOR ..... 4

A. The Court Appointed Rust To Act As Settlement Administrator ..... 4

B. The Administrative Determinations of Rust Are Reasonable And Should Be Approved ..... 5

C. The Results of Rust's Administrative Determinations ..... 6

III. THE COURT SHOULD APPROVE THE REQUESTED FEES AND EXPENSES INCURRED BY RUST AND CLASS COUNSEL IN CONNECTION WITH THE ADMINISTRATION OF THE SETTLEMENT ..... 7

A. Rust's Requested Fees and Expenses are Reasonable And Should Be Approved ..... 7

B. Class Counsel's Requested Fees and Expenses are Reasonable And Should Be Approved ..... 7

IV. THE COURT SHOULD APPROVE THE REQUESTED $325,000 AWARD FOR THE NAMED PLAINTIFFS ..... 9

A. Notice Of The Requested Incentive Award Has Been Provided To Members Of The Class And There Have Been No Objections ..... 9

B. The Requested Incentive Award is Fair and Reasonable And Should Be Approved ..... 10

1. Plaintiff Breakwater Trading LLC ..... 10

2. Plaintiff Richard Hershey ..... 12

3. Plaintiff Josef Kohen ..... 12

V. THE COURT SHOULD AUTHORIZE THE DISTRIBUTION OF THE NET SETTLEMENT FUND AFTER DEDUCTING THE FEES AND EXPENSES REQUESTED HEREIN AND SHOULD BAR ANY FURTHER CLAIMS ...................13

CONCLUSION.......................................................................................................................14

# TABLE OF AUTHORITIES

## Cases

*Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 1997) .......... 10, 11

*In re BP Propane Indirect Purchaser Antitrust Litig.*, 06-cv-3541, Docket No. 233 (N.D. Ill. Aug. 4, 2011) .......... 8

*In re Cardinal Health Inc. Sec. Litig.*, 528 F.Supp.2d 752 (S.D. Ohio 2007) .......... 2

*In re Matter of Continental Securities Litig.*, 962 F.2d 566 (7th Cir. 1992) .......... 10

*In re Sumitomo Copper Litigation*, 74 F.Supp. 2d 393 (S.D.N.Y. 1999) .......... 8

*Kohen v. Pacific Inv. Mgmt. Co. LLC*, 244 F.R.D. 469 (N.D. Ill. 2007) .......... 3

*Merrill Lynch, Pierce, Fenner & Smith v. Curran*, 456 U.S. 353 (1982) .......... 8

## Other Authorities

Elaine Buckberg, Todd Foster, Ronald Miller & Stephanie Plancich, Recent Trends in Shareholder Class Action Litigation: Bear Market Cases Bring Big Settlements 8 (NERA, Feb. 2005) .......... 2

H.R. Rep. No. 93-975, p. 1 (1974), 1974 U.S. Code Cong & Admin. News .......... 8

Plaintiffs respectfully submit this Motion pursuant to paragraph 19 of the Final Order and Judgment [Docket No. 572] ("Final Order") entered on May 2, 2011 that ordered Plaintiffs to file "…an accounting for distribution of the [net] settlement fund…" and the Stipulation and Agreement of Settlement dated January 21, 2011 [Docket No. 557] ("Settlement").[1]

As is explained below, the proposed distribution, even after deducting all the requested fees and expenses herein, provides Class members entitled to share in the Net Settlement Fund with approximately 50% of their total damages. See Section V below. This is an exceptionally high payout compared to the average class action in which class members typically receive between 3 cents and 6 cents on the dollar in their damages.[2]

Specifically, Plaintiffs respectfully move this Court for an Order that:

(1) approves the administrative determinations by the Court-appointed Settlement Administrator, Rust Consulting, Inc. ("Rust") concerning Class members' Proofs of Claim (see II *infra*);

(2) authorizes a payment of $595,811.70 from the Settlement Fund to Rust for the balance of its fees and expenses incurred and to be incurred in connection with the notice, administration and distribution of the Net Settlement Fund (see III *infra*);

(3) authorizes a payment of $50,467.80 to the Court-appointed sole lead counsel Lovell Stewart Halebian Jacobson LLP ("Lovell Stewart") and local counsel Miller Law LLC ("Miller Law") from the Settlement Fund for their services rendered since the April 7, 2011 fairness hearing, which were incurred in connection with the administration of the Net Settlement Fund (see III *infra*);

---

[1] On December 14, 2011, this Court granted Plaintiffs' motion for an extension of time to file an accounting from December 13, 2011 until February 13, 2012. See Docket No. 575.

[2] See Elaine Buckberg, Todd Foster, Ronald Miller & Stephanie Plancich, Recent Trends in Shareholder Class Action Litigation: Bear Market Cases Bring Big Settlements 8 (NERA, Feb. 2005), cited in *In re Cardinal Health Inc. Sec. Litig.*, 528 F.Supp.2d 752, 764 (S.D. Ohio 2007).

(4) authorizes a payment of $325,000 from the Settlement Fund to be shared among the three named Plaintiffs for reimbursement of their expenses and compensation of their time devoted to this ligation; (see IV *infra*);

(5) directs the distribution of the Net Settlement Fund, after deduction of the foregoing requested payments and a reserve fund of $593,750.00 (0.5% of the Settlement Fund), to the Class members who have submitted claims which Rust has determined to be eligible to share in the Net Settlement Fund (see V *infra*); and

(6) bars any further claims against the Net Settlement Fund (see V *infra*).

Class Counsel will submit a [Proposed] Distribution Order accomplishing the foregoing before the noticed February 28, 2012 hearing date so that they can analyze any opposition papers that may be filed.

## I. BACKGROUND

### A. Preliminary Approval of Settlement

On January 21, 2011, after more than five years of litigation, Plaintiffs moved for preliminary approval of the proposed Settlement, which provided for a payment of $118,750,000 for the benefit of the following Class that was previously certified by this Court:

> [a]ll persons who purchased, between May 9, 2005 and June 30, 2005 ('Class Period'), inclusive, a June 2005 10 – year Treasury note futures contract in order to liquidate a short position (the 'Class'). Excluded from the Class are defendants and any affiliated or associated party of defendants.

*Kohen v. Pacific Inv. Mgmt. Co. LLC*, 244 F.R.D. 469, 475 (N.D. Ill. 2007), *aff'd*, 571 F.3d 672, *cert. denied*, 130 S.Ct. 1504 (2010).

On January 26, 2011, this Court entered an order that, among other things: (1) preliminarily approved the Settlement; (2) directed implementation of an extensive six-pronged program of notice to Class members notifying them of the Settlement and their rights thereunder;

(3) set certain deadlines leading up to the April 7, 2011 fairness hearing; and (4) appointed Rust as Administrator of the Settlement in order to effectuate the notice provisions and administer the claims submitted by Class members seeking to share in the Net Settlement Fund. See Docket No. 562 *passim*.

**B. The Extensive Notice Provided To Class Members**

Pursuant to and consistent with the Court's January 26, 2011 Order, Rust provided notice of the Settlement to members of the Class as follows: (1) direct mail notice to the largest traders in the Class (who are estimated to have held more than 65% of the positions of the entire Class); (2) direct mail notice to all Chicago Board of Trade ("CBOT") clearing members (requesting that such clearing members mail the notice to their customers who transacted in June 2005 Contracts); (3) direct mail notice to other Class members whose names and addresses Plaintiffs have learned through other means; (4) posting notice at the Chicago Mercantile Exchange (successor to the CBOT); (5) notice by publication in two separate industry publications and their respective websites; and (6) the establishment of a settlement website. See Docket No. 564.

**C. Final Approval of Settlement**

On March 3, 2011, Plaintiffs moved for Final Approval of the Settlement. See Docket Nos. 566-68. The deadline for Class members to file objections to the Settlement was March 15, 2011. See Docket No. 562 at ¶7. No objections to any aspect of the Settlement have ever been filed.

On April 7, 2011, the Court held a fairness hearing and entered a Final Order that, among other things: (1) granted final approval of the Settlement in all respects finding that the Settlement was fair, reasonable and adequate and was in the best interests of Plaintiffs and the Class; (2) found that the six-pronged program of notice provided to the Class was the best notice

practicable under the circumstances such that it fully complied with Rule 23 of the Federal Rules of Civil Procedure and due process of law; (3) found that the Plan of Allocation was fair, reasonable and adequate; (4) determined that Class Counsel's requested attorneys' fees and expenses were fair, reasonable and adequate such that they should be paid from the Settlement Fund; (5) directed Plaintiffs to file an accounting for the distribution of the Net Settlement Fund at a later date; and (6) retained jurisdiction of the implementation and enforcement of the Settlement. See Docket No. 572 *passim*. No appeals seeking relief from any aspect of the Final Order have ever been filed.

## II. THE COURT SHOULD APPROVE THE ADMINISTRATIVE DETERMINATIONS OF THE COURT-APPOINTED SETTLEMENT ADMINISTRATOR

### A. The Court Appointed Rust To Act As Settlement Administrator

The Court previously appointed Rust Consulting, Inc. ("Rust") as Settlement Administrator.[3] See Docket No. 562 at ¶12. Rust's primary duties as Settlement Administrator included: (1) disseminating Notice of the Settlement to the Proposed Class[4]; (2) receiving, reviewing and processing Proofs of Claims submitted by potential Class members seeking to share in the Net Settlement Fund; and (3) calculating Class members' share of the Net Settlement Fund based on the information provided in their Proofs of Claims in a manner consistent with the approved Plan of Allocation. *Id*.

### B. The Administrative Determinations of Rust Are Reasonable And Should Be Approved

[3] Rust is a firm specializing in the administration of class action settlements and has previously administered settlements involving claims for manipulation in violation of the Commodity Exchange Act, 7 .U.S.C. §1 *et. seq*. ("CEA").

[4] In connection with Plaintiffs' motion seeking final approval of the Settlement, Rust submitted a declaration that detailed the steps it took to comply with the Court-approved program of notice. See Docket No. 564 (Affidavit of Eric J. Miller of Rust Consulting, Inc. Regarding Notice and Claims Administration).

As set forth in the accompanying Affidavit of Eric J. Miller Regarding The Processing of Proof of Claim and Release Forms And Calculation of Allowed Claims ("Miller Affidavit"), Rust has received and processed 3,810 Proofs of Claims submitted by potential members of the Class. Miller Affidavit ¶7. Rust initially reviewed each Proof of Claim in order to determine whether it was valid and included all required information and documentation. *Id*. ¶9.

If Rust determined that a Proof of Claim was deficient in whole or in part, Rust caused a "Notice of Deficiency" letter to be sent to the person who filed the claim. *Id*. The Notice of Deficiency (1) notified the person who filed the claim of the nature of the deficiency (2) requested information necessary to cure the defect and (3) notified the claimant that if the defect was not cured within twenty days, the claim would be (depending on the nature of defect) rejected in whole or in part. *Id*.

If Rust determined that a claimant was ineligible to participate in the Settlement, Rust caused a "Notice of Ineligibility" letter to be sent which advised the person who filed the claim that their claim was ineligible and was being be rejected. *Id*. ¶10. Since July 2011, Rust has mailed 233 Notice of Deficiency letters and 332 Notice of Ineligibility letters. *Id*. ¶12.

Rust combined separately submitted claims into single claims to the extent that separately submitted claims had an exact match of a claimant's name and tax identification number. *Id*. ¶14. Rust sent a letter to each claimant whose claims were combined and advised them of same. *Id*. In total, Rust combined 867 separate claims into 160 combined claims. *Id*.

Rust also sent letters to 82 Class members who submitted claims in which their purchases of June 2005 Contracts exceeded their sales of such contracts. *Id*. ¶15. These letters requested additional documentation in order to correct the imbalance and informed claimants that to the extent they did not provide additional information to cure the imbalance, their claim would be

adjusted such that their total purchases of June 2005 Contracts would be reduced to equal their total sales. *Id*. As Plaintiffs detailed to the Court in their December 12, 2011 motion papers, the effect of these imbalances would be to pay additional monies to Class members whose data is out of balance at the expenses of those Class members show submitted balanced claims. See Docket No. 573 at ¶6. Ultimately, 67 Class members had their purchases with the highest artificiality reduced so that their total purchases equaled their total sales. *Id*.

No claim has been rejected because it was received after the deadline for the submission of Proofs of Claim. *Id*. ¶19. Plaintiffs believe that when the interests of justice are balanced, it would be unfair to prevent an otherwise valid claim from sharing in the Net Settlement Fund solely because it was submitted after the June 7, 2011 deadline. In total, 236 Class members submitted late claims that have been determined to be otherwise eligible to share in the Net Settlement Fund. *Id*.

Plaintiffs respectfully submit that the foregoing determinations by Rust are reasonable and should be approved.

### C. The Results of Rust's Administrative Determinations

Based on the administrative determinations in "B" above, Rust determined that 655 Class members were eligible to share in the Net Settlement Fund. *Id*. ¶18. Based on the Plan of Allocation that was approved by the Court, Rust has calculated that these 655 eligible Class members' Adjusted Allowed Claims total $185,328,904.40. *Id*. Rust further determined that 2,737 claims remain ineligible. *Id*. ¶16. Finally, Rust determined that 418 eligible claims have an Allowed Claim of less than or equal to zero. *Id*.

## III. THE COURT SHOULD APPROVE THE REQUESTED FEES AND EXPENSES INCURRED BY RUST AND CLASS COUNSEL IN CONNECTION WITH THE ADMINISTRATION OF THE SETTLEMENT

At the time the Settlement was executed, Class Counsel estimated that the Settlement notice and administration expenses and fees of Rust and Class Counsel would be approximately $1,000,000. Settlement ¶3(a). As set forth below, the requested notice and administration expenses and fees are substantially less than the previous $1,000,000 estimate.

### A. Rust's Requested Fees and Expenses are Reasonable And Should Be Approved

Rust respectfully requests payment of its fees and expenses in the amount of $532,980.35. Miller Affidavit ¶23. These fees and expenses were incurred in connection with Rust's duties as Settlement Administrator. *Id*. Pursuant to Section 3(b) of the Settlement, Rust has previously been reimbursed $31,920.19 for its out of pocket expenses in connection with the dissemination of the notice of the Settlement to the Class.

Additionally, Rust estimates that it will require an additional $62,831.35 to finalize the distribution of the Net Settlement Fund. *Id*. Rust agrees that if its completion of the administration of the Net Settlement Fund results in fees and expenses of less than the estimated amount of $62,831.35, the difference shall be included in a re-distribution to eligible Class members or will be part of a Court-approved *cy pres* distribution. *Id*.

### B. Class Counsel's Requested Fees and Expenses are Reasonable And Should Be Approved

Lovell Stewart respectfully requests payment of their fees and expenses in the amount of $45,600.80, which have been reasonably incurred in connection with the administration of the Settlement since the April 7, 2011 fairness hearing. See Declaration of Christopher McGrath, Esq. at ¶¶5-8. Similarly, Miller Law respectfully requests payment of its fees in the amount of $4,687.00, which have been reasonably incurred in connection with the administration of the Settlement since the April 7, 2011 fairness hearing. See Declaration of Marvin A. Miller, Esq. at

¶¶4-6.

Courts in this District have previously approved the payment of much larger settlement administration attorneys' fees and expenses in connection with much lower settlements. See *e.g., In re BP Propane Indirect Purchaser Antitrust Litig.*, 06-cv-3541, Docket No. 233 at p. 2 (N.D. Ill. Aug. 4, 2011) (Zagel, J.) (approving $211,804.66 in fees and expenses incurred by class counsel in connection with the administration of a $15,350,000 settlement fund in an alleged propane manipulation).

Since the April 7, 2011 fairness hearing, Lovell Stewart has dealt with Class members, the Settlement Administrator, experts, and Defendants' counsel, in order to guide the administration of the Settlement to the point of this proposed distribution. McGrath Declaration ¶4. Lovell Stewart has worked on numerous past CEA manipulation settlements in "esoteric" and "complex" CEA manipulation cases like this one in order to help ensure a fair and reasonable claims administration process. *Compare Merrill Lynch, Pierce, Fenner & Smith v. Curran*, 456 U.S. 353, 356 (1982) quoting H.R. Rep. No. 93-975, p. 1 (1974), 1974 U.S. Code Cong & Admin. News at 5843 *with In re Sumitomo Copper Litigation*, 74 F.Supp. 2d 393, 395 (S.D.N.Y. 1999) (CEA manipulation cases are "complex and difficult").

Notice of this application will be provided by direct mail to all 655 members of the Class who have been determined by Rust to be eligible to share in the Net Settlement Fund. Also, a copy of this application will be posted on the Settlement website. This will provide actual notice to all approved claimants and will allow them an opportunity to object to Class Counsel's requested fees and expenses.

*****

Class Counsel respectfully submits that their foregoing fees and expenses and those of

Rust were reasonably incurred in connection with the administration of the Settlement and should be approved by the Court

## IV. THE COURT SHOULD APPROVE THE REQUESTED $325,000 AWARD FOR THE NAMED PLAINTIFFS

### A. Notice Of The Requested Incentive Award Has Been Provided To Members Of The Class And There Have Been No Objections

Now that the distribution of the Net Settlement Fund will be made to eligible Class members, it is appropriate that the three named Plaintiffs be reimbursed for their time and expenses incurred throughout the more than five years that this action has been pending.

Notice of the requested $325,000 incentive fee was previously provided to members of the Class. Section V.B. of the Class Notice that was provided to members of the Class in February 2011 stated:

> At the time the Net Settlement Fund is distributed to Class members, the Plaintiffs will seek reimbursement of their own expenses and compensation for their time devoted to this litigation in the aggregate amount of no more than $325,000 to be paid from the Settlement Fund. A separate notice of this application and an opportunity to object will later be provided to Class members who submit approved proofs of claims.

To date, no Class members have objected to the requested $325,000 incentive award.

Further, as set forth in the Class Notice language quoted above, notice of this application will be provided to all 655 members of the Class who are eligible to share in the Net Settlement Fund. Specifically, notice of this application will be sent by direct mail and posted on the Settlement website. This will allow eligible Class members a second opportunity to object to the requested incentive award.

### B. The Requested Incentive Award is Fair and Reasonable And Should Be Approved

Incentive payments are appropriate in the Seventh Circuit in order to compensate class

representatives for the time and expense they have incurred in conferring a benefit on the other beneficiaries of a common fund. See *In re Matter of Continental Securities Litig*., 962 F.2d 566, 571 (7th Cir. 1992) (Posner, J.). The relevant factors to consider in deciding whether an incentive award is warranted include "…the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1997) (Cudahy, J.).

As set forth below and more fully in the declarations of each of the three named Plaintiffs submitted herewith, the foregoing factors strongly merit approval of the requested incentive award, which is less than 0.4% of the benefit that Plaintiffs' time and effort helped to confer upon 655 members of the Class that have been determined to be eligible to share in the $93,345,365.04 Net Settlement Fund.

**1. Plaintiff Breakwater Trading LLC**

Plaintiff Breakwater estimates that it spent more than 2,000 hours on this case since its inception in 2005. Declaration of Walter Yurkanin ("Yurkanin Declaration") ¶9 and Exhibits A and B (detailing Breakwater's contributions). Breakwater estimates that the cost of these hours exceeds $800,000. *Id*. ¶10. The foregoing hours and estimated cost are attributable only to Breakwater's Chief Executive Officer, Chief Operating Officer and General Counsel. *Id*. ¶¶9-10. Additional time was spent by Breakwater's Chief Technology Officer, traders, accountants, financial engineers, analysts and administrative personnel. *Id*. Accordingly, the estimated $800,000 value of Breakwater's time is a lower-bound estimate.

As a big player in the financial futures market[5], Breakwater incurred significant

[5] Breakwater was a high-volume trader in U.S. 10-year Treasury futures contracts during the Class Period and lost in excess of $15.5 million on its sales of June Contracts. See Docket No.

reputational and business risks when it decided to become a named Plaintiff in a lawsuit alleging manipulation against one of the most recognizable players in the market, PIMCO. Yurkanin Affidavit ¶4. Indeed, Lead Counsel Christopher Lovell, Esq. has been handling CEA manipulation claims since 1980 and can remember no instance in which a "big player" like Breakwater risked its reputation and became publicly involved with a CEA class action against a defendant as highly recognizable as PIMCO was and is. *Compare* Declaration of Christopher Lovell ("Lovell Declaration") at ¶8 *with Cook v. Niedert*, 142 F.3d at 1016 (affirming an incentive fee award and noting that the "most significant" finding of the lower court meriting such an award was the fact that the class representative feared retaliation but nonetheless proceeded with the action).

Breakwater's unique expertise in U.S. Treasury markets and financial futures contracts proved invaluable to the successful prosecution of this litigation. Yurkanin Declaration at ¶5. Christopher Lovell believes that no prior class representative in any of his prior CEA manipulation cases has contributed as much to a successful result as Breakwater did here. Lovell Declaration at ¶2.

In addition to its expertise, Breakwater responded to interrogatories, searched for, reviewed and produced thousands of documents and files, submitted to multiple depositions, reviewed, edited and analyzed legal memoranda, and otherwise worked with Class Counsel and Plaintiffs' experts throughout the five-plus years of litigation herein. Yurkanin Declaration at ¶¶6-8.

**2. Plaintiff Richard Hershey**

Plaintiff Hershey spent an estimated 345 hours performing his duties for the Class. Declaration of Richard Hershey In Support of Incentive Award at ¶30. These duties included,

---

422 at Ex. I.

among others, reviewing and producing documents, preparing for and giving a deposition, reviewing Court documents, conferring with counsel, reviewing Plaintiffs' mediation submissions, and otherwise monitoring the litigation. *Id*. Hershey estimates that the reasonable value of the time he spent is $39,675.00 (345 hours x $155/hour). *Id*. ¶32.

**3. Plaintiff Josef Kohen**

Plaintiff Kohen spent an estimated 25 hours performing his duties for the Class. Declaration of Josef Kohen ("Kohen Declaration") at ¶4. These duties included, among others, attending meetings, participating in phone calls with counsel, reviewing and producing documents, preparing for and giving a deposition, and reviewing Court documents. *Id*. Kohen estimates that the reasonable value of the time he spent is $8,750.00 (25 hours x $350/hour). *Id*. ¶5.

*****

In addition to the facts set forth in "1" – "3" above, the division of any incentive award among the three named Plaintiffs should take account of the following facts. Although Plaintiff Kohen assisted the litigation as a named Plaintiff, he was not a class representative and was only in reserve to be a class representative. Kohen Declaration at ¶3. Plaintiff Hershey was a named Plaintiff and a class representative from the beginning of the case until the end but faced the argument by Defendants (including in a petition for certiorari before the Supreme Court of the United States) that he had a net gain on his June 2005 Contract transactions during the Class Period. See Defendants' Petition For A Writ of Certiorari dated October 30, 2009 at p. 12. Plaintiff Breakwater participated in the litigation as a named Plaintiff, class representative and a significant market participant who regularly conferred with Class Counsel and Plaintiffs' experts to provide input and strategize. Lovell Declaration ¶7.

One way to divide a $325,000 incentive award among the named Plaintiffs would be to award $287,500 to Plaintiff Breakwater, $31,500 to Plaintiff Hershey and $6,000 to Plaintiff Kohen.

In sum, Plaintiffs respectfully submit that the requested $325,000 aggregate incentive award for the three named Plaintiffs should be approved by the Court.

## V. THE COURT SHOULD AUTHORIZE THE DISTRIBUTION OF THE NET SETTLEMENT FUND AFTER DEDUCTING THE FEES AND EXPENSES REQUESTED HEREIN AND SHOULD BAR ANY FURTHER CLAIMS

The Net Settlement Fund is currently valued at approximately $93,345,365.04. Miller Affidavit ¶25. Thus, even after deducting the requested fees and expenses detailed herein, eligible claiming Class members will receive approximately 50% of their total damages. This is an excellent result for the Class.

As set forth in II.C. above, Rust has determined that 655 Class members are eligible to share in the Net Settlement Fund. *Id*. ¶18. The total Adjusted Allowed Claims of these Class members total $185,328,904.40. *Id*. A schedule of these Class members' Adjusted Allowed Claims and their percentage of the Net Settlement Fund is attached as Exhibit G to the Miller Declaration. *Id*. In order to protect the privacy of these Class members, their names have been redacted. *Id*.

Plaintiffs respectfully request that the Court direct that the distribution of the Net Settlement Fund (after deducting the requested fees and expenses herein) be made to the 655 members of the Class that Rust has determined to be eligible to share in the Net Settlement and that such distribution be in the amounts detailed in Exhibit G to the Miller Declaration.

Plaintiffs and Rust also request the establishment of a reserve fund in the amount of $593,750.00 (0.5% of the Settlement Fund) to be used to pay any additional late claims as may

be directed by the Court, to adjust errors in payments, to make other equitable adjustments, and to pay any additional costs, expenses and attorneys' fees resulting from the above. *Id*. ¶24. If no such late claims are approved, a large portion of these monies will be available to be paid to the eligible claiming Class members herein.

Finally, in order to allow for a full and final distribution of the Net Settlement Fund, Plaintiffs request that the Court bar any further claims against the Net Settlement Fund, including any further claims or responses submitted in connection with any Deficiency Notices or Notices of Ineligibility.

**CONCLUSION**

For the reasons stated above, Plaintiffs respectfully submit that this Court should grant Plaintiffs' motion and enter an order that:

(1) approves the administrative determinations by Rust as set forth in the Miller Affidavit and the Exhibits thereto;

(2) authorizes a payment of $595,811.70 from the Settlement Fund to Rust for the balance of its fees and expenses incurred and to be incurred in connection with the notice, administration and distribution of the Net Settlement Fund;

(3) authorizes a payment of $50,467.80 to Class Counsel from the Settlement Fund for their services rendered since the April 7, 2011 fairness hearing, which were incurred in connection with the administration of the Net Settlement Fund;

(4) authorizes a payment of $325,000 from the Settlement Fund to be shared among the three named Plaintiffs for compensation of their time devoted to this ligation;

(5) directs the distribution of the Net Settlement Fund, after deduction of the foregoing requested payments and a reserve fund of $593,750.00 (0.5% of the Settlement Fund),

to the Class members who have submitted claims which Rust has determined to be eligible to share in the Net Settlement Fund; and

(6) bars any further claims against the Net Settlement Fund.

Dated: February 13, 2012

Respectfully submitted,

*/s/ Christopher Lovell*
Christopher Lovell
Christopher McGrath
**LOVELL STEWART HALEBIAN JACOBSON LLP**
61 Broadway, Suite 501
New York, New York 10006
Tel: (212) 608-1900

By: */s/ Marvin A. Miller*
Marvin A. Miller
**MILLER LAW LLC**
115 S. LaSalle Street, Suite 2910
Chicago, Illinois 60603
Tel: (312) 332-3400